316 So.2d 129 (1975)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS
v.
John P. ROMANO.
No. 10347.
Court of Appeal of Louisiana, First Circuit.
July 14, 1975.
*130 Johnie E. Branch, Jr., Baton Rouge, and Alvin J. Liska, New Orleans, Asst. Gen. Counsel, Highway Dept., for appellant.
Clint L. Pierson, Jr., Covington, for appellee.
Before LANDRY, BLANCHE and YELVERTON, JJ.
BLANCHE, Judge.
The State of Louisiana, through the Department of Highways, takes this appeal from a judgment of the Twenty-second Judicial District Court which awarded the defendant, John P. Romano, the sum of $8,953.15, less a credit in the amount of $2,261 for a prior deposit, plus interest on the balance from June 7, 1971, until paid, and for all costs of the proceedings. In addition, the Department was cast with $1,300 each for the defendant's two experts, taxed as court costs.
This is an expropriation proceeding pursuant to State Project No. 13-11-07, Federal Aid Project No. F76(14), Chinchuba-Covington Highway, State Route Louisiana-U.S. 190, St. Tammany Parish, whereby the State of Louisiana expropriated 2,415 square feet of frontage from the defendant's land. The date of taking was June 8, 1971.
The property is located on the east side of U.S. Highway 190, approximately four miles south of the City of Covington, Louisiana. Prior to the taking, the tract measured 119.92 feet front on the highway by a depth of 218.7 feet. It is bounded on the south side by Sixteenth Street, a dedicated but unopened street.
At the time of the taking, subject property was improved with a one-story frame and brick veneer building with an asphalt shingle roof, constructed on a slab measuring 76 feet front by 36 feet deep. It was utilized as a cocktail lounge and snack bar by the defendant. The part taken was a strip across the entire frontage of the property 20.14 feet in depth on the north side and 20.06 feet on the south edge. The improvements taken were part of the shell parking surface and a portion of a small board fence on the north side. The taking also necessitated the relocation of two advertising signs.
The experts for both sides agreed that the highest and best use of the property was highway commercial.
Henry B. Breeding, appearing for the Department, used five comparable sales and arrived at a value of 75 cents per square foot, or $2,173 for the part taken. His comparables ranged from 65 to 80 cents per square foot, and he refused to adjust those figures for the passage of time.
Regarding severance damages, he used the cost approach, less depreciation, before and after the taking, and concluded that subsequent to the taking the subject property had increased in value by $18,000 and, therefore, severance damages were not due. By adding $362 for the improvements taken to the $1,811 land value, Breeding concluded total compensation due to the defendant was $2,173.
The Department's other expert, Edward cents per square foot, or $1,691 for the J. Deano, used four of the same comparables as did Breeding, and arrived at 70 land taken. He, like Breeding, refused to adjust for time, explaining that he could not find a definite trend of price increases in the area.
He denied severance damages were due, even though the parking in front of the defendant's establishment was reduced by approximately one-half. The total available parking area for the entire tract was reduced by approximately 30 percent. He, *131 like Breeding, was of the opinion that the subject tract was more valuable after the taking than before.
By adding $413 for the improvements taken to the $1,691 land value, Deano arrived at a just compensation due of $2,104.
Frank J. Patecek, for the defendant, used three comparable sales, two of which were used by the Department's experts, and arrived at $1.20 per square foot, or $2,898. Even though Patecek used similar comparables to those used by the Department, he reached a much higher value by adjusting each sale upward for time at the rate of one percent per month. His justification for doing so was a study he made of area sales from 1950 up until the date of taking. Even though he could not show increases in value during the one and one-half years prior to the taking, he was of the opinion that his study established that increases would take place on a steady basis at approximately 12 percent per year.
In another departure from the Department's experts, Patecek awarded severance damages. Prior to the taking, the front of defendant's establishment was 70 feet from the highway. After the taking, the depth was reduced to 50 feet. As a result, Patecek argued that prior to the taking, eighteen cars could be parked in front of the establishment but after the taking only nine cars could be so parked, reflecting a 50 percent loss in parking capability. Even though there is ample room in the rear for parking, he opined that rear parking is not good for night business because people are afraid to venture into the rear after dark. As a result, the defendant would have to spend a good sum of money to illuminate the rear and also build a rear entrance.
Judging from his experience as a realtor, Patecek concluded that the subject property suffered a functional depreciation of 14 percent as a result of the 30 percent reduction of the total available parking space. He was especially concerned that the entire loss of parking space came from the front of the defendant's property. He acknowledged that rear parking is available but stated that it is not as desirable as front parking for highway commercial use, even in daylight hours.
Patecek determined the entire property on the day of taking was worth $67,685.76. After adding $970 for the value of the improvements taken to the $2,898 land value, he arrived at a total taking of $3,868. He subtracted this figure from the value of the property on the date of taking and arrived at a value after taking of $63,817.76. His 14 percent functional depreciation for loss of parking, therefore, totaled $8,934.48. After allowing an additional $200 to relocate two signs upon the premises, he added the land value, the value of the improvements taken, and severance damages, for a total just compensation due of $13,002.48.
The defendant's other appraiser, John Lejeune, used three comparables, two of which were the same as Patecek's. The third was the judicial valuation of similarly situated property at 90 cents per square foot in State, Department of Highways v. Smith, 270 So.2d 178 (La.App. 1st Cir. 1972), writ refused, La., 272 So.2d 379 (1973). He, too, adjusted his comparables for time and arrived at the figure of $1.15 per square foot, or $2,777.
Regarding severance damages, he stated the defendant would be forced to construct a rear entrance to the establishment in view of the decreased parking spaces available in the front. In this regard he noted that the building was not designed for a rear entrance. He was, therefore, of the opinion that severance damages should be awarded, especially in view of the fact that the decrease in parking in front of the establishment made it less attractive to highway passersby. He noted that 50 percent of the available front parking space was lost; and whereas before the taking the owner enjoyed optimal parking facilities, after the taking it was somewhat reduced.
*132 He admitted that even if an establishment such as the defendant's did not have front parking, the owner could, nevertheless, make money in spite of it. However, he argued that to a prospective purchaser it would not have as high a value as an establishment which did have optimal parking facilities. Therefore, to adjust this decrease in value which occurred as a result of the taking, he concluded that the State should pay severance damages which he estimated as 15 percent functional depreciation on the remainder of the property after the taking. He estimated the value of the whole before the taking as $56,817. He then subtracted the land value plus $145 for improvements taken, or $2,922, and arrived at a value for the remainder of $53,895. Fifteen percent functional depreciation of that figure amounted to $8,084. Therefore, by adding $8,084 to the $2,922 as the value of the part taken, he arrived at a just compensation of $11,006.
After hearing the expert testimony at the trial for both sides, the trial judge concluded the subject tract was worth $1.16 per square foot at the time of taking, or $2,801.40. He stated he arrived at this figure by use of the 90 cents per square foot valuation in the Smith case, supra, plus adjustments for topography and time.
He also allowed severance damages of 10 percent of the value of the total property after the taking, utilizing Lejeune's value of $53,895 as his base, and awarded $5,389.50. Fifteen cents per square foot was set as the value of the shells, or $362.25; and $400 was allowed for relocation of the two advertising signs. Therefore, a total just compensation of $8,953.15 was awarded. In addition, the Department was cast with $1,300 each for the defendant's two experts, taxed as court costs.
The Department's appeal puts at issue only the valuation of the property and the award of severance damages.
Concerning valuation, the Department assigns as error the fact that the trial judge allowed a one percent per month increase in price for time. They contend that no evidence was produced by the defendant to justify such a conclusion. The trial judge, however, was impressed by Patecek's approach and his study of price patterns during the preceding twenty years. Patecek reasoned that even though there were no sales in the one and a half years prior to the taking from which an increase could be projected, he felt that his study conclusively showed that prices steadily increased year by year at the rate of 12 percent. Therefore, he concluded it would be inequitable to disallow time adjustments to the defendant's comparables.
The trial judge was also impressed with a post-taking comparable of the Department's appraiser, Deano, being Burns to Landry, for $1.06 per square foot and Landry's resale of the same property one month later for $1.38 per square foot. The trial judge obviously considered that the Landry re-sale, though a post-taking, gave credence to Patecek's conclusion that prices were on an upward trend throughout the period in question. Therefore, he allowed the defendant's comparables to be adjusted for time.
Additionally, the Smith comparable used by the defendant's appraiser, Lejeune, and expropriated only six months prior to the subject property, was valued by the trial court by use of time adjustments, and that valuation was subsequently affirmed by this Court.
The trial judge in the instant suit was of the opinion that increases in value were continuing at the time of taking, and after a thorough examination of the record we find no error in this conclusion.
The Department next contends it was error for the trial judge to rely solely upon the Smith case, contending the court must also consider the other evidence adduced at trial and that regardless of the finding of the value of other property in the area, each case must stand on its own facts, citing *133 State, Department of Highways v. Allen, 243 So.2d 337 (La.App. 4th Cir. 1971), writ refused, 258 La. 245, 245 So.2d 716 (1971), and State, Department of Highways v. James, 226 So.2d 535 (La.App. 4th Cir. 1969).
The trial judge in his reasons stated that he followed one of Lejeune's comparables, the Smith case. Lejeune testified at trial that taking the basic value of 90 cents per square foot in Smith, adjusting by 10 cents for the fact that the subject property had a higher elevation with no low-lying areas, as did the Smith tract, adding another 10 cents for size, and an additional 6 cents for time based upon a one percent increase per month, he arrived at $1.16 per square foot. This was also the exact figure determined by the trial judge. The question before this Court, therefore, is whether or not it was error for the trial judge to utilize the judicial determination of value for land similarly situated and taken pursuant to the same State Project, and apply it to the subject tract after adjusting by standard procedures for topography and time.
Initially, we agree with the Department that the jurisprudence establishes that a trial judge should not rely solely upon a prior judicial determination in placing a value on similarly situated property, but rather he should use all the evidence presented to him on the trial of the matter, Allen and James, supra.
The foregoing rule is, nevertheless, subject to the maxim that the finding of value by a trial judge will not be disturbed unless clearly erroneous, State, Department of Highways v. Spillman, 276 So.2d 905 (La.App. 1st Cir. 1973); State, Department of Highways v. Hickman, 277 So.2d 525 (La.App. 3rd Cir. 1973). It follows without argument that when the valuation is supported by the evidence, it cannot be clearly erroneous and, therefore, will not be disturbed.
In the instant case, the defendant's experts arrived at $1.20 and $1.15, respectively, per square foot as the value of the tract by using comparable sales. The only meaningful difference between the defendant's and Department's appraisals was that the defendant adjusted for time and the Department refused to do so. As previously noted, we have concluded it was proper to adjust for time. The trial judge concluded $1.16 per square foot, relying upon Smith, which was one of the comparables offered by the defendant.
In conjunction with Lejeune's appraisal for the defendant, the entire record of the Smith suit was introduced into evidence in the instant case. The two tracts are similarly located, both being located near Covington, Louisiana, in a subdivision known as Alexiusville and both properties fronting on U. S. Highway 190. Both takings occurred pursuant to the same State Highway Project, approximately six months apart.
The trial judge stated he felt the Smith tract was the best comparable to the subject tract, adjusted in the standard manner, and thus arrived at what he considered to be the commercial value of the property at the time of taking.
We conclude that a value of $1.16 for the subject tract is amply supported by the appraisals of both the defendant's experts. Therefore, we cannot say that the trial judge's use of the prior determination of value in the Smith case was clearly erroneous, and the award will not be disturbed on that basis, Spillman and Hickman, supra.
Regarding severance damages, the subject tract lost approximately 30 percent of its available parking space as a result of the taking. Therefore, the defendant's experts contended the subject property decreased in value. The establishment is located *134 on a main U. S. Highway and depends upon highway traffic for its success. The fact that the entire loss of parking spaces occurred in front of the establishment would have a definite impact upon the attractiveness of the establishment to passersby on the highway, and we conclude the trial judge was not manifestly erroneous in awarding severance damages of 10 percent of the value of the remaining property. We note this figure is lower than the 14 and 15 percent figures offered by the defendant's experts.
We note that in awarding severance damages the trial judge utilized Lejeune's remainder value of $53,895 and awarded 10 percent thereof. The use of Lejeune's figure was an inconsistency because to arrive at it, Lejeune utilized $1.15 per square foot as the value of the land, whereas the trial judge determined the true value of the land was $1.16 per square foot. Since the land totaled 26,192 square feet, the value before the taking must be increased by one cent per square foot or $261.92. Therefore, the total value before the taking should be $57,078.92 rather than $56,817. By subtracting $145 for improvements taken and $2,801.40 for land actually taken, the after taking value is $54,132.52. Ten percent severance damages thereof would be $5,413.25 rather than $5,389.50 as determined by the trial judge.
It is, therefore, ordered, adjudged and decreed that the award of severance damages be amended to read $5,413.25, and the total award to the landowner is hereby set at $8,976.90 less a credit of $2,261 for prior deposit, plus interest on the balance from June 7, 1971, until paid, and all costs of the proceedings. All costs of this appeal as may be legally assessed against the State of Louisiana are to be paid by the State.
Amended and as amended, affirmed.