324 So.2d 606 (1975)
STATE of Louisiana, DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
OIL MARK CORPORATION, Defendant-Appellee.
No. 12774.
Court of Appeal of Louisiana, Second Circuit.
December 10, 1975.
Rehearing Denied January 16, 1976.
Writ Refused February 17, 1976.
*607 D. Ross Banister, William W. Irwin, Jr., Jerry F. Davis, Robert L. Ledoux, Johnie E. Branch, Jr., Baton Rouge, by Jack C. Fruge, Sr., Ville Platte, for plaintiff-appellant.
Holloway, Baker, Culpepper & Brunson, by William H. Baker, Herman A. Castete, Jonesboro, for defendant-appellee.
Before PRICE, GLADNEY and MARVIN, JJ.
En Banc. Rehearing Denied January 16, 1976.
PRICE, Judge.
In this highway expropriation proceeding brought by the Department of Highways under the "quick taking" statute, the landowner contests the amount deposited by the State as just compensation for the property taken.
Oil Mark Corporation owns a tract of land fronting on the east side of Louisiana Highway 167 near the northerly corporate limits of Jonesboro. This tract is situated in the southeast corner of the intersection of Jeffries Street and Louisiana 167.
A self-service gasoline station is operated by Oil Mark on a portion of the tract at the corner of the intersection. The petition for expropriation and attached exhibits show the area taken by the State as a small triangular area in the intersection measuring 300 square feet. The State deposited the sum of $919 in accord with the expropriation statute as the amount of just compensation due the landowner for the property taken. Oil Mark answered the petition contesting the amount of property being taken and requesting the amount of just compensation be increased substantially beyond that deposited by the State.
After a trial on the merits, the district court found the area being taken by the State was 3,123 square feet rather than the 300 square feet alleged by the State. The court found the property being taken to have a value of $2.15 per square foot or a total of $6,714.66. The court further found the severance of the part taken caused damage to the remainder of the property in the sum of $18,323.90. Judgment was therefore rendered awarding Oil Mark the total sum of $25,038.56 as just compensation for the taking of its property.
*608 The State has appealed contending the trial court committed the following errors:
1. In determining the amount of land taken;
2. In finding the subject tract had a value of $2.15 per square foot as commercial property at the time of the taking rather than a unit value of $1.20 per square foot;
3. In failing to use the cost to cure method of awarding severance damages;
4. In awarding an unreasonable amount for expert witness fees to defendant.
Quantity of Land Taken
The dispute in the amount of land being taken results from a contention by Oil Mark that the State had no right-of-way for Highway 167 at the time of the taking beyond the paved edge of the roadway. Therefore, under this position, there is a strip presently being used as a wide shoulder of the highway along the entire frontage of Oil Mark's property containing approximately 2,823 square feet which forms the area in dispute.
Oil Mark presented the testimony of Richard E. Crawford, a civil engineer, who testified he made a search of the public records of Jackson Parish and could not determine that the State had a recorded right-of-way for Highway 167 as it abuts the Oil Mark property. Crawford surveyed the entire tract belonging to defendant and prepared a plat which relates the property to the existing paved roadway of Highway 167. It is from his testimony and plat that the trial judge determined the area being taken to exceed 3,000 square feet rather than 300.
The State offered into evidence a certified copy of a right-of-way deed from J. P. Peevy, recorded December 17, 1929, which grants the State a total right-of-way of 100 feet through his properties in Jackson Parish for the location of a highway described as the Jonesboro-Hodge State Highway. The record reflects Peevy acquired all of the SW ¼ of the SW ¼ of Section 30, T15N, R3W prior to granting this right-of-way to the State. The subject property lies within this quarter section above described. Defendant contends the right-of-way instrument relied on by the State does not describe the location of the highway with sufficient specificity to relate it to the present location.
We do not find it necessary to resolve this contention advanced by defendant as the record reflects it has no title to any of the disputed right-of-way area.
Oil Mark acquired ownership of its property abutting Highway 167 in two separate transfers on September 16, 1969. It acquired a small tract in the immediate corner of the subject intersection from Orlan Gilbert which is the area on which the service station facility was constructed. This tract was conveyed by a metes and bounds description as follows:
"Beginning at the NE/c of the SW/4 of SW/4 of Section 30, Township 15 North, Range 3 West, and running West 30 feet, thence running South 822 feet, or to the South line of a paved street, running East and West through the said forty, thence run West 370 feet to the East Right of Way line of U.S. Highway No. 167 as now located and paved for a starting point: Thence run Southeasterly along and with said Highway Right of Way 54 feet 3 inches, thence run Northeasterly 62 feet 8 inches, thence run Northerly 29 feet, thence run West 83 feet to the starting point, together with all of the improvements thereon and appurtenances thereunto belonging, located in Jackson Parish, Louisiana."
On the same date Oil Mark acquired an L-shaped tract which surrounds the above described plot on which the station is located. This transfer from Elbert A. Walsworth *609 and wife was also by metes and bounds as follows:
"Beginning at the NE/c of SW/4 of SW/4, Section 30, Twp. 15 North, Range 3 West, Jackson Parish, Louisiana, thence run West along and with the North Boundary line of the SW/4 of SW/4 Section 30, Twp. 15 North, Range 3 West a distance of 30 ft., thence run South a distance of 822 ft., thence run West a distance of 231 ft., to the point of beginning, thence continue and run West a distance of 169 ft. or to the East right of way line of U.S. Hwy. No. 167, thence run in a Southeasterly direction along and with the right of way line of U.S. Hwy. 167 a distance of 98.38 ft., thence run East a distance of 125 ft., thence run North a distance of 88 ft. to the point of beginning, together with all improvements and appurtenances thereunto belonging, Less and except the following described property, to-wit:
Beginning at the NE/c of the SW/4 of SW/4 of Section 30, Township 15 North, Range 3 West, and running West 30 feet, thence running South 822 feet, or the South line of a paved street, running East and West through the said forty, thence run West 370 feet to the East Right of Way line of U.S. Highway No. 167 as now located and paved for a starting point; Thence run Southeasterly along and with said Highway Right of Way 54 feet 3 inches, then run Northeasterly 62 feet 8 inches, thence run Northerly 29 feet, thence run West 83 feet to the starting point, together with all of the improvements thereon and appurtenances thereunto belonging, located in Jackson Parish, Louisiana."
The property descriptions contained in the two foregoing transfers when related to the plat of the survey made by defendant's own surveyor, Richard E. Crawford, show the physical boundaries of the Oil Mark tract to be entirely outside and to the east of the right-of-way area in dispute as also shown on the plat.
The Crawford survey plat and the Highway Department survey attached to the expropriation petition each show the northwest corner of the Oil Mark lot as being the same as the northwest corner of the triangular plot expropriated, and that the east boundary of Highway 167 adjacent to the west boundary of defendant's lot coincide.
We therefore find the trial court erred in requiring the State to compensate the defendant for property it did not own.
Value of Land Taken
The record shows that all witnesses who appraised the subject property considered its highest and best use to be as presently being utilized as part of a commercial tract. There is a substantial difference, however, in the opinions of the State appraisers from those employed by defendant as to the per square foot value of defendant's property for this purpose.
Dan Carlock, a real estate appraiser of Baton Rouge, testified on behalf of the State. Using the market data-comparison method, he found the value to be $1.20 per square foot at the time of the taking.
It was stipulated that the testimony of L. J. Roy, also an appraiser of Baton Rouge, would be substantially the same as Carlock if he were called to testify.
Carlock considered several market transactions, but relied primarily on the prior sale of the subject property to Oil Mark with necessary adjustments for time in establishing his estimate of market value. Oil Mark paid $.99 per square foot in 1969 for the two tracts which now comprise its single ownership at the subject location. Carlock also gave consideration to two other sales of commercial property within an estimated eight blocks on the same highway. The sale from Hearne to Traina in 1971 for $.87 per square foot, and Hearne to Wilson in 1972 for $.95 per square foot. These sales were each updated for time *610 and according to Carlock's testimony confirmed the rate of appreciation in value applicable to properties in this area.
Defendant offered the testimony of Darrel V. Willett of Alexandria, and O. L. Jordan of Shreveport, both real estate appraisers. It was stipulated that if H. L. Bass of Jonesboro testified, his conclusions would be substantially the same as those of Jordan in respect to market value and severance damages. The same stipulation was made in regard to the testimony of Hab Monsur of Alexandria reflecting similar conclusions as testified by Darrel Willett.
Using the same method as used by the State appraisers, Willett determined the property of Oil Mark to have a value of $2.09 per square foot. On the same basis, O. L. Jordan concluded the unit value of the property was $2.25 per square foot.
The primary difference in the opinions of the State appraisers and those of the defendant results from the adjustments made to the comparable sales selected to reflect market value. Willett and Jordan made adjustments from time, location, and utility which in effect raised their estimates on subject property to more than double the unit price of the sales found comparable. For example, the Hearne to Wilson sale in 1972 which was also used by the State appraisers was adjusted from $.99 per square foot to achieve estimates of $2.09 and $2.25 per square foot for the subject property.
Although we recognize the discretion accorded the trial judge in fixing market value in his determination of just compensation, we find the adjustments made by defendant's appraisers and accepted by the court are somewhat excessive when weighed in conjunction with the testimony of Carlock and Roy.
In other recent appeals from expropriation cases in this same area, the unit price of commercial property has been found to range from $.73 to $1.75 per square foot. See State, Department of Highways v. DeJean, 322 So.2d 265 (La.App.1975); State, Department of Highways v. Bounds, 319 So.2d 549 (La.App.2nd Cir. 1975); State, Department of Highways v. United Pentecostal Church of Hodge, 313 So.2d 886 (La.App.2nd Cir. 1975); State, Department of Highways v. Whitman, 313 So.2d 918 (La.App.2nd Cir. 1975); State, Department of Highways v. Model Development Corporation, 322 So.2d 270 (La.App.1975).
Assuming the subject property has some advantage over some of the comparables selected and relied on by the experts who testified for either party, we find a fair market value of the property taken at the time of expropriation would be $1.80 per square foot. Thus the award for 300 square feet taken should be $540.
Severance Damages
It is undisputed that the taking of the 300 square foot area by the State to round out the corner of this intersection will result in the necessity to relocate a portion of the improvements to defendant's property. The State admits the pump islands, canopy, and advertising sign must be moved back a short distance. It contends the small service station building in which rest rooms and merchandise are maintained will not have to be moved. An estimate of cost of relocation amounting to $3,600 was prepared by a contractor employed by the State. Relying on this cost estimate, Carlock and Roy were of the opinion this cost of relocation of improvements was the extent of the severance damages sustained by defendant's property.
Willett and Jordan approached the evaluation of damages to the remainder by making an appraisal of the market value of the entire property prior to the taking and of the property as it will exist after the construction project has been completed. This method resulted in substantially higher estimates of severance damages as Willett *611 found the property will be reduced in value by $24,896 and Jordan by $23,095.
Neither of these experts made any attempt to procure estimates of actual costs of relocation of improvements. They were of the opinion this method of evaluation of severance damage was not appropriate under the circumstances. Both experts comcluded all of the improvements including the building would require relocation on the remainder to enable the property to continue to have a reasonable utility as a service station. In their opinion most of the equipment would necessarily have to be replaced and the cost of relocation would be too great to justify using this approach to determine severance damages.
On this appeal the State contends that as the defendant's experts gave no consideration to the "cost to cure" approach in their appraisal of damages to the remainder, the trial judge was in error in accepting their testimony on this issue.
The applicability of the "cost to cure" approach rule in determining severance damages is concisely stated by the Supreme Court in State, Department of Highways v. Mason, 229 So.2d 89 (La.1969), as follows:
"If such an approach has relevance to the measure of damages, it should only be employed to demonstrate a diminution in market value resulting from the partial taking, for we find no sound basis in this Court's jurisprudence for the application of this method of assessing severance damages, save in the most unique situation . . . wherein the ascertainment of market value of the facility is not possible."
We find no error in the refusal of the trial judge to award severance damages solely on the basis of the testimony of the State's experts who followed the "cost to cure" approach in their determination of damages.
Both parties point out in brief to this court that the trial court made certain errors in mathematical calculations in arriving at the $18,323.90 awarded as damages.
As we conclude the total amount awarded for this purpose is excessive, it is not necessary to discuss these errors in detail.
While we recognize the improvements have been substantially damaged by the taking and that some damage will accrue to the remaining land, we do not find the percentage of damage to the land as estimated by defendant's experts to be reasonable.
In making his determination, Jordan used a fifty per cent reduction in value to the remaining land and the improvements. The stipulated value of depreciated improvements was $17,500. Willett found the improvements to have been damaged in the amount of $12,249, and $12,122 to the remaining land. We find these estimates on the damages to the improvements reasonable, and we accept the sum of $12,249 as the damage to the improvements.
The basis for defendant's appraisers' opinion on the reduction in market value of the land remaining after the taking results primarily from the effect they envision on convenient access because of barrier curbs planned in the construction project. These curbs will reduce the access from Highway 167 to the property from its present 97.96 feet to 57.22 feet. Also, they contend the improvements will lose a sight advantage now enjoyed which will no longer exist after the relocation.
We can see that some devaluation of the remaining tract will occur because of these factors, but it is difficult to understand that the measure of damage will be as great as estimated by defendant's appraisers.
There is no substantial change in lot size or frontage on the highway. The sole detriment to value is the limitation on access *612 caused by the barriers. We are of the opinion the remaining land has suffered no greater reduction than $3,000 and an award in this amount would adequately compensate defendant for this purpose. To recapitulate, we find defendant entitled to severance damages of $15,249.
Expert Witness Fees
The State contends the amounts awarded defendant for the fees of experts testifying on its behalf are unreasonable and excessive. The trial court awarded the amount charged the defendant by each of these witnesses which is as follows:

 Darrel Willett $1,725.00
 O. L. Jordan 1,700.00
 Richard Crawford 300.00
 Lavelle Nunn 476.64
 A. Ray Bond 300.00
 Hab Monsur 1,725.00
 H. L. Bass 1,950.00

We have previously considered this identical issue in several recent cases before this court arising out of the highway construction undertaken by the State in the Jonesboro-Hodge area. See State, Department of Highways v. United Pentecostal Church of Hodge, supra; State, Department of Highways v. Whitman, supra; State, Department of Highways v. DeJean, supra; State, Department of Highways v. Bounds, supra; State, Department of Highways v. Model Development Corporation, supra; State, Department of Highways v. Coblentz, 322 So.2d 276; State, Department of Highways v. Hammons, et al., 322 So.2d 280 (La.App.1975).
The same witnesses as called in this case were used by the landowner in the above cited cases where we found the amount awarded by the trial court to be excessive and reduced the award.
Defendant argues on this appeal that the instant case differs from the foregoing cases as the basis of this court's determination in the previous decisions was an absence in the record of specific testimony by the expert witnesses of their time spent and other costs factors to justify their charge. Defendant argues the record does show an estimate of time consumed by each witness in this case.
The amount of time consumed and the amount charged the landowner are only some of the factors to be given consideration in determining the fee of an expert.
We find the expression of the court in State, Department of Highways v. Donner Corporation, 236 So.2d 841 (La.App.3rd Cir. 1970), to be the appropriate rule and we quote as follows:
"We find no merit to plaintiff's contention that the expert witness fees should be eliminated completely. We are convinced, however, that the amounts fixed by the trial court as expert witness fees in the instant suit are unreasonably excessive, and that they are out of line with allowances made in other similar cases. We think the trial court in fixing expert witness fees should consider the value of the property or severance damages involved, as well as the amounts allowed in other cases as witness fees. Here the expert witness fees allowed for two out of the five expert witnesses who testified amount to almost one-third of the total amount involved in this suit. We agree that the defendant landowner should be compensated for the expenses which he reasonably must incur in obtaining expert testimony for trial, but he is not entitled to compel plaintiff to pay an unreasonable amount."
In this instance it is apparent the trial judge placed the most emphasis on the amount charged the landowner by the expert.
After giving due consideration to the testimony in the record, the lack of any complex problems connected with this appraisal and the amount in controversy, we *613 find the fees awarded to be excessive and they are reduced as follows:

 Darrel V. Willett $700
 O. L. Jordan 700
 H. L. Bass 250
 Hab Monsur 250
 Richard Crawford 250

We do not find from the evidence in the record that A. Ray Bond was ever accepted as an expert nor were his qualifications as such stipulated. He did not testify and the State objected to the introduction of his bill for services rendered to defendant. For the same reasons given in the case of State, Department of Highways v. United Pentecostal Church of Hodge, supra, we disallow the fee awarded for Bond and also the award for the services of Lavelle Nunn, a photographer engaged by defendant.
For the reasons assigned, the judgment of the trial court is amended to reduce the total amount awarded for just compensation to the sum of $15,789 and to fix expert witnesses' fees as above set forth.
Amended, and as amended, affirmed.