BOLIN, Judge.
This is one of a series of expropriation cases arising out of the widening of U.S. Highway 167 in the Jonesboro-Hodge area. The property expropriated is adjacent to the Oil Mark tract involved in the recent decision of this court in State, Department of Highways v. Oil Mark Corporation, reported in 324 So.2d 606 (1975).
The district court awarded the landowners $6,805.61 for the land and improvements, $16,787.50 for severance damages, and awarded an additional $9,562.28 as expert witness fees. The Department appeals, contending there was no severance damage and that the other awards were excessive. Defendants answer the appeal asking for an increase in the award for the part taken and affirmation of the remainder of the judgment. Further, defendants seek $5,000 as attorney fees against plaintiff for prosecution of this allegedly frivolous appeal. We amend the judgment by reducing the award to defendants to $9,305.61 and reducing the expert witness fees to a total of $2,650.00.
In the instant case defendants’ property measures 405.09 feet along U.S. Highway 167, with a depth of 174.27 feet on the north line of Harrison Street, and is located in the northeast quadrant of the intersection of Harrison Street and Highway 167. Rose Oil Corporation, lessee, operates a service station on the south part of the property and a drive-in restaurant is located on the north part. Neither lessee is a party to this suit, although plaintiff paid to Rose Oil $7,400 for relocating the pump islands, canopy and signs necessitated by the taking.
It is undisputed defendants’ tract contained a total of 2.201 acres, of which the Department has expropriated .058 acres, or 2,526 square feet. The front portion of the property had been filled to make it suitable for commercial purposes. Although there is some controversy regarding the depth of this filled part of the property, it is at grade with the highway for a depth of approximately 75 feet at the south end with a greater depth at the north end. The expropriation took a triangular shaped portion from the front of the property commencing with a flare at the south end at the intersection of Harrison and Highway 167. The triangle. narrows at the north end with the greater portion being taken from the south part in front of the *310 service station. The parties agree the expropriation did not destroy the character or utility of the service station site as commercial property.
VALUE OF PROPERTY TAKEN
The Department’s appraisers, L. J. Roy and Dan Carlock, used some or all of the same comparables they used in Oil Mark, supra, and concluded that, at the time of taking on September 5, 1974, the subject tract had a market value of $1.20 a square foot or $3,031 for the 2,526 square feet expropriated. Utilizing some of the same comparables but applying different adjustments for passage of time, the following square-foot value was assigned to this part by defendants’ appraisers: Darrel V. Willet, $2.13; H. L. Bass, $2.50; O. L. Jordan, $2.25; and Hab Monsur, $2.06.
The trial judge considered the above appraisals and concluded the only portion of the property affected by the taking was the front use part utilized as a service station; that the highest and best use of this part was for commercial purposes, having a market value of $2.10 per square foot. He also found the concrete and asphalt paving on the part taken had a value of $1,500 which he added to the value of the land and awarded defendants $6,805.61 for the property taken. From our reading of the cold record this award appears to be slightly high. However, we do not choose to substitute our opinion for that of the trial judge on this portion of the judgment.
SEVERANCE DAMAGES
The most controversial issue is the question of severance damage to the remainder. The trial judge determined the rear use portion of the tract, which was residential in nature, was unaffected by the taking. He found the front use portion of the tract contained 25,520.67 square feet to which he assigned a square-foot value of $2.10, indicating a total value of $53,593.41 not including the improvements. To this he added the depreciated value of the service station building, the canopy, paving, etc., which he estimated at $25,000, making a total value of $78,593.41 before the taking. From this he deducted $6,805.61, the amount he had previously determined to be the value of the part expropriated, leaving $71,787.80. He concluded that after the taking the front use tract had a value of $55,000, or a depreciation of about 30%, indicating a diminution in value of the remainder of $16,787.80.
The district judge did not discuss in detail his reasons for finding severance damages. However, he did state he believed these damages were caused by the barrier curb erected along Harrison Street, the catch basins to be located along the front of this property and adjacent to Highway 167, and the future limited access to the service station.
The service station site had been under lease to Rose Oil Company (Rose Old Timers of Mississippi, Inc.) from the previous owners since June 1, 1959. The original lease was for an initial five year period with options to renew at the end of each period, and these options were exercised periodically. The original lease stipulated a consideration of $125 per month with each renewal increasing the rental $25 per month. The fourth and final renewal of the lease commenced June 1, 1974 at a monthly rental of $200. Thus, at the time of the taking this lease had nearly five years to run.
The lease, a copy of which is in the record, granted the lessee the right to make any and all desired changes, alterations, additions, reductions and improvements to the building on the premises. Further, it was agreed between the parties that all movable equipment placed on the premises by the lessee, including tanks, pumps, etc., would remain the property of the lessee and could be removed by the lessee upon termination of the lease.
Exhibits in the record establish the highway department negotiated with Rose Old Timers to pay to the lessee $7,400 as the cost to cure the damage occasioned by the expropriation. This settlement represented the reimbursement to the lessee for the *311 cost to relocate a pump island, relocate existing signs, move and relocate a canopy, reset island fixtures, repair concrete, and relocate water and air lines.
From the foregoing evidence we find defendants have little cause to complain about the limited access afforded the service station, at least for four and one-half years from the date of trial which is the controlling date in fixing severance damages in a quick-taking by the highway department. (La.R.S. 48:453). This conclusion holds true with regard to the barrier curb to be constructed at the “flare” as well as the catch basins to be located along the front of the property. Since the lessee apparently is satisfied with the settlement for any damage, loss of business or inconvenience occasioned by the taking and intends to continue paying the agreed rent and to exercise all the rights and privileges accorded under the lease, it seems clear there is no present diminution in commercial value of the leasehold interest presently being utilized as a service station.
However, the acceptance by the lessee of the settlement tendered by the highway department prior to trial will not preclude the recovery of severance damages if we find sufficient proof the barrier curbs and limited access driveways have diminished the market value of the remainder. While the estimates of severance damages by defendants’ appraisers were, in our opinion, grossly excessive, we find defendants are entitled to nominal severance damages of $2500.
EXPERT WITNESS FEES
The trial judge fixed fees of the expert witnesses used by the defendants as follows:
Hab Monsur $ 1,925.00
Darrel Willet 2,175.00
H. Loren Willet 450.00
H. L. Bass 1,950.00
O. L. Jordan 2,175.00
A. Ray Bond 450.00
Lavelle Nunn 437.28
Total $ 9,562.28
Although H. Loren Willet was accepted as an expert he did not submit an appraiser’s report nor did he testify concerning the value of the part taken or the severance damages to the remainder. His testimony, which consumed no more than one day, was devoted almost entirely to the effect the proposed widening of the highway will have on the truck business of the service station. His fee is fixed at $150.
We find the fees of O. L. Jordan and Hab Monsur excessive. These experts filed their written appraisals in the record. They were also present and testified during the trial. Their testimony was limited to explaining the manner in which they arrived at the amounts charged defendants for the reports. Their fees are therefore reduced to $500 each.
A. Ray Bond testified only as to the reproduction cost of the service station building, which was not taken in the expropriation. His testimony, including questions relative to his qualification, findings and charges for his estimate of reproduction costs and court appearance, consumed eight pages of the record. The fee for this witness is fixed at $100.
From our careful review of this record and for the rationale expressed in State of Louisiana, Department of Highways v. Warner, 329 So.2d 913 (La.App. 2d Cir. 1976) and cases therein cited, we disallow the fee for the photographer, Lavelle Nunn, and fix the remaining fees as follows :
Darrel V. Willet $ 700.00
H. L. Bass 700.00
O. J. Jordan 500.00
Hab Monsur 500.00
H. Loren Willet 150.00
A. Ray Bond 100.00
Total $2,650.00
For the reasons assigned the judgment of the district court is amended to reduce the amount awarded defendants from $23,593.41 to $9,305.61, subject to a credit of $3,193.00 previously deposited by the State of Louisiana through the Department *312 of Highways .and withdrawn by the defendants, R. L. Salter, Sr., and Bess Frey Salter. The judgment is further amended by reducing the total expert witness fees from $9,562.28 to $2,650.00 as reflected herein.
As amended the judgment is affirmed.
Before BOLIN, PRICE, HALL, MARVIN and JONES, JJ.