338 So.2d 154 (1976)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
Humble W. THURSTON, Defendant-Appellee.
No. 13004.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1976.
Rehearing Denied, November 1, 1976.
Writ Refused January 7, 1977.
*155 William W. Irwin, Jr., Jerry F. Davis, Johnie E. Branch, Jr., Bernard L. Malone, Jr., by Bernard L. Malone, Jr., Baton Rouge, for plaintiff-appellant.
Baker, Culpepper & Brunson by Herman A. Castete, Jonesboro, for defendant-appellee.
Before BOLIN, PRICE and HALL, JJ.
En Banc. Rehearing Denied, November 1, 1976.
PRICE, Judge.
This is an expropriation proceeding by the State of Louisiana through the Department of Highways in connection with the widening of Louisiana Highway 2 (Bernice-Farmerville Highway) in Union Parish. The Department of Highways obtained an order under the quick taking statute for the expropriation of a .226 acre strip of land from a 1.726 acre tract owned by Humble W. Thurston abutting Highway 2 about 1½ miles east of Bernice. The Department deposited the sum of $865 in the registry of the court as the estimated just compensation due Thurston for the property taken.
In answer to the expropriation proceeding, Thurston placed at issue the amount of land actually taken by the Department, the value of the property taken, and whether severance damages have resulted to the remaining property by the taking.
The trial court found the area of the property taken from defendant to consist of .446 acres rather than the .220 acres claimed by the Department. The court also found Thurston to be entitled $1,670 for the property taken and to severance damages of $3,587.50.
In appealing from the judgment rendered in accord with these findings, the Department of Highways complains only in respect to the trial court's determination of the amount of land taken. Thurston answered the appeal asking for an increase in the amount awarded for property taken and severance damages allowed.
AMOUNT OF LAND TAKEN
The dispute as to the amount of land actually taken results from an uncertainty *156 as to the width of the right-of-way of Louisiana Highway 2 prior to the filing of the expropriation proceeding. It is undisputed that the Department of Highways had no recorded right-of-way for this road, and had acquired the right to maintain the highway under the St. Julien doctrine.[1]
The land being expropriated is described in the petition and order for expropriation by boundaries. The north boundary is described as the existing south right-of-way line of Highway 2. Thurston contends this is the edge of the blacktop traveled portion of the road as located at the time of the expropriation. The Department of Highways contends the right-of-way under the St. Julien doctrine also includes the shoulders, ditches, slopes, and cut or fill areas existing at that time. It further contends the total width should be determined by reference to prior construction limits as reflected by the records of the Department.
Assuming that the right-of-way acquired under the St. Julien doctrine includes any shoulders, ditches, or slopes constructed and maintained in connection with the highway as argued by the Department, the burden is on it to show that these appurtenances were actually built and maintained on Thurston's property.
The trial judge in his written reasons for judgment concisely reviewed the evidence presented by the Department and correctly concluded it was not sufficient to satisfy the burden of showing the right-ofway extended beyond the paved portion of the highway. We quote the pertinent part of the trial judge's opinion as follows:
William Hickey, assistant road design engineer with the Department, testified that Highway 2 was first constructed in 1928 as a 14 foot wide gravel road, with the plans for that project calling for a ditch on each side of the road for drainage. The highway was widened in 1942 to a 20 feet wide blacktop road, but those plans did not show any ditching. Both Hickey and James R. Wheat, head land surveyor for the Department's boundary survey unit, testified that the usual construction area for a highway consists of the road surface proper, shoulders, ditches and slopes. Therefore, the outer limit of this construction area would normally be the point where the back slope crosses the natural ground line. This is usually approximately 1½ feet beyond the back slope in order that road maintenance equipment can have room in which to work the slopes.
* * * Implicit in the St. Julien doctrine is the rule that the least property area that will adequately serve the purpose of the taker will be the only one granted to him. The burden was upon the Department in the case at bar to show by a legal preponderance of the evidence the exact limits of the physical construction performed by it, in either 1929 or 1942, in connection with Highway 2, which would have clearly indicated to the landowner at that time the dimensions of the land area which the Department intended to occupy for a public purpose. The witnesses who testified on behalf of the Department on this point had no direct knowledge pertaining to the question but relied entirely upon old plats and surveys. Their testimony consisted largely of information concerning the usual limits of highway construction rather than the actual limits of the construction in question in 1928 or 1942. It is the conclusion of this Court that the Department has not proven that it acquired a right-of-way across the north portion of the subject property beyond the limits of the road surface proper. It follows that *157 the amount of land actually expropriated in this case, as shown on the Terral plat of survey, is 14,381.28 square feet on the south side of the highway and 5,045.43 square feet on the north side of the highway, for a total of 19,426.712 square feet or .446 acre rather than the .220 acre claimed by the Department.
We find no error in the above findings of the trial judge and are in accord with his conclusion that the area expropriated consisted of .446 acre.
VALUE OF PROPERTY TAKEN AND SEVERANCE DAMAGES
Thurston's property prior to this taking consisted of a rectangular tract on the south of the highway containing 1.726 acres. It was improved with a one story brick veneer building, 50 feet in length by 35 feet in depth, used by defendant for a florist shop, beauty shop, and sale of children's wear. Prior to the taking, the building was situated 85 feet from the edge of the pavement of the highway. An asphalt surfaced parking lot and drive containing 5,000 square feet was in front of the building. The taking will place the front of the building within 14 feet of the new right-ofway line and eliminate the asphalt parking area in front of the building.
The appraisers for the Department and the landowner are of the opinion the best and highest use of the property is for rural commercial purposes as now being used. The two Department appraisers valued the land at $373.69 and $650 per acre. They relied on sales of small rural tracts to determine market value. Thurston's appraisers relied on sales of commercial properties in the Town of Bernice to arrive at their estimates of between 12½ and 15 cents per square foot for the value of the land taken.
The trial judge considered the deed of acquisition in 1969 showing the land and improvements were purchased by Thurston for $9,000 to indicate the estimates of value of the land at $1,000 per acre.
The comparable sales relied on by the landowner's appraisers were not indicative of market value of rural property, and the trial judge was correct in not finding these estimates controlling. The court allowed a per acre value almost double the estimate of the Department of Highways' appraisers which is just compensation for the land taken under the circumstances.
There is no dispute in regard to the amount of $1,224 for the value of the asphalt paving allowed by the trial court.
Appraisers for both parties agree the remainder of Thurston's property has sustained some damage as a result of the taking. The principal cause of the loss of market value is the loss of the front parking resulting from the right-of-way line being extended to within 14 feet of the building. Since the taking, parking is provided on the east side of the building.
Thurston's appraisers were of the opinion this factor has damaged the remainder between 40 and 50 per cent. The three experts who testified on his behalf, in arriving at their estimates of severance damage, determined the before and after value of the land and improvements. In estimating the value of the building, they used the reproduction cost as of the time of the taking, and gave the building a value of between $27,075 and $35,000. Their final estimates of severance damages ranged from $10,340 to $14,000.
The trial judge, in establishing a before and after value of the property, accepted the testimony of one of the Department of Highways' appraisers in part and one of Thurston's appraisers in part. He concluded the total value prior to the taking to be $18,891. After deducting the value of the part taken of $1,670, he found the remaining property to be worth $17,221. He further found the percentage of diminution of market value estimated by Thurston's appraisers to be excessive, and the estimate of the Department of Highways' experts to be too low. He found the property had suffered a 25 per cent loss in value because of the taking or $3,587.50.
Thurston contends the court was in error in its conclusions as none of the expert *158 witnesses testified in accord with its findings.
The trial judge in an expropriation case is not required to accept or reject the testimony of any particular witness, but may give whatever weight he finds appropriate to the testimony of all witnesses in making his factual determination of market value and severance damages. He may reach a conclusion which does not coincide with the testimony of any witness. State, Department of Highways v. Salassi, 244 So.2d 871 (La.App. 1st Cir. 1971).
There has been no showing that the trial judge abused this discretion in determining the severance damages in this case.
The judgment appealed from is affirmed.
NOTES
[1] This jurisprudential rule provides that an unopposed appropriation for a public purpose creates a servitude and precludes an action for damages for trespass by the landowner who is relegated to recovery of the value of the property taken. The term "St. Julien" comes from the parent case, St. Julien v. Morgan's Louisiana & T. R. Co., 35 La.Ann. 924 (1883). The cases following this doctrine have recently been overruled in Lake, Inc. v. Louisiana Power and Light Company, 330 So.2d 914 (La. 1975). The Supreme Court gave prospective effect of its ruling in Lake, and thus the doctrine is applicable to the instant case and this is not made an issue by the landowner.