343 So.2d 222 (1977)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
Lucille Tranchina ROMANO et al., Defendants-Appellees.
No. 11118.
Court of Appeal of Louisiana, First Circuit.
February 14, 1977.
Rehearing Denied March 21, 1977.
*223 Wm. W. Irwin, Jr., Jerry F. Davis, Alva J. Jones, Baton Rouge, J. Bryan Miller, Alvin J. Liska, New Orleans, Johnie Branch, Jr., Baton Rouge, for plaintiff-appellant.
Clint L. Pierson, Jr., Covington, for defendants-appellees.
Before SARTAIN, COVINGTON and LOTTINGER, JJ.
COVINGTON, Judge:
This is an expropriation proceeding by the State of Louisiana through the Department of Highways, in connection with the construction of a portion of Interstate Highway 12 in St. Tammany Parish, Louisiana. On November 16, 1971, the Department of Highways obtained an order under the "quick-taking" statute, LSA-R.S. 48:441 et seq., for the expropriation of a strip of land consisting of 18.431 acres from a 120 acre-tract in Sections 3 and 4, T7S, R10E, owned by the defendants, Lucille Tranchina Romano, Stephanie Ann Romano Mack, Terrance Mary Romano and Richard T. Romano. After the taking, the tract was *224 divided into two parcels: the portion to the north, consisting of 55.646 acres, continued to have access along the south side of State Route La. 1085; the southerly portion, irregular in shape and consisting of 45.739 acres, was left "landlocked", without access to any public road. The Department deposited the sum of $15,866.00 in the registry of the court as the estimated just compensation due the defendants for the property taken. The defendants withdrew the funds deposited and filed an answer to the expropriation proceeding in which they placed at issue the value of the property taken, whether severance damages have resulted to the remaining property by the expropriation and the amount of severance damages sustained thereby.
The trial court found the area of property taken from the defendants to consist of 18.43 acres and also found the southerly portion, consisting of 45.92 acres, to be landlocked. The court held the defendants to be entitled to $750 per acre, or the sum of $13,822.50 as the value of the property taken, and to severance damages of $1,050.00 per acre, or the sum of $48,216.00, for a total award of $62,038.50, subject to a credit for the amount deposited.
In appealing from the judgment rendered in accord with these findings, the Department complains of the trial court's fixing of the value of the property taken, the fixing of the severance damages and the fixing of the fees of the expert witnesses. We amend and affirm.
Value of the Property Taken
The record shows that all expert witnesses who appraised the subject property considered its highest and best use to be rural residential purposes, developed into small acreage homesites, otherwise described as "speculative rural property." This classification is consistent with the jurisprudential requirements of "best and highest use."
It is well settled that potential use of expropriated property may be deemed its best and highest use for purposes of evaluation provided that there is a reasonable expectation that the property may be so used, developed or employed in the reasonably foreseeable future. This court has said that "where potential use is reasonably prospective, or reasonably certain to the extent that such use is removed from the realm of guesswork, speculation and conjecture, such potential use may be considered the best and highest use for fixing value in an expropriation proceeding"; State, Department of Highways v. St. Tammany Homestead Association, 304 So.2d 765, 771 (La. App. 1 Cir. 1974), writ ref. 307 So.2d 373 (La., 1975).
There is a substantial difference in the opinions of the Department's appraisers from those of the defendants' appraisers as to the value of the property taken.
Carr T. Dowell, III, a real estate appraiser of New Orleans, testified on behalf of the Department. Using the market datacomparison method he found the value to be $525.00 per acre, or a total of $9,676.00 as the total value. Dowell considered several market transactions, but relied primarily on three comparables with certain adjustments for time and size in arriving at his valuation. His first comparable was a sale from Carolyn Burns Bradley to Thomas J. Gross, August 26, 1970, of a 38.1-acre tract for $19,000.00 or $499.00 per acre, located about one mile from the subject property, with adjustments indicating $505.00 per acre for subject property. The second was a sale from Mamie Raiford Parker to Shannon Harrison, April 17, 1971, of a 40-acre tract for $20,000.00 or $500.00 per acre, located about 1½ miles from the subject property, with adjustments indicating $495.00 per acre for subject property. As his third comparable Dowell used a sale from Russell F. King to Fritz G. Lindley, September 21, 1968, of 40.04 acres for $28,000.00 or $450.00 per acre, located about three miles from the subject property, indicating $530.00 per acre for subject property, after adjustments. The sales were each updated for time and adjusted for size differentiation, and based on these comparables Dowell estimated the market value of the subject property to be $525.00 per acre.
*225 The Department also offered the testimony of Edward J. Deano, a real estate appraiser of St. Tammany Parish. Also using the market data-comparison method and three comparables including the first two that Dowell had used, Deano fixed a valuation of $500.00 per acre, or a total of $9,215.00. Instead of the King-Lindley comparable used by Dowell, Deano used a sale of 31 acres from Jack H. Vermillion to Alvin P. Landry, in January of 1970, having a sale price of $9,000.00 or $290.00 per acre. Based upon these comparables, he fixed a valuation of $500.00 per acre on the property taken. He testified that he did not make a breakdown on adjustments for size, topography or time.
Frank J. Patecek, a real estate appraiser of St. Tammany Parish, testified on behalf of the defendants. Patecek used all of the sales in the general area involving tracts larger than five acres during the 12-month period prior to the date of the taking, November 16, 1971. Using the market datacomparison method, he found the value to be $750.00 per acre, or a total of $13,961.00. The only comparable used by Patecek that had been used by the Department's appraisers was the sale of Parker to Harrison in April of 1971, but in using it he found an indicated value of $694.93 per acre for the subject property. He used as his other comparables a sale from Williams to Shippen, January 5, 1971, 10.76 acres for $7,801.00, or $725.00 per acre, located 1¼ miles north of the subject property, indicating a value of $780.53 per acre for subject property; a sale from Harrison to Jackson, April 27, 1971, 19.18 acres for $10,000.00 or $531.37 per acre, located 3/4 mile west of the subject property, indicating a value of $710.05 per acre for subject property; a sale from Lampier to Shippen, November 10, 1971, 10.75 acres for $5,600.00, or $520.93 per acre, located 1 mile north of subject property, indicating a value of $739.72 per acre for subject property; a sale from Parker to Raiford, November 28, 1971, 6 acres for $6,000.00, or $1,000.00 per acre, located on the Ponchatoula-Madisonville highway, indicating a value of $770.00 per acre for subject property; a sale from Goodbee to Flanagan, November 6, 1971, 5.665 acres for $5,665.00, or $1,000.00 per acre, located ½ mile north of subject property, indicating a value of $770.00 per acre for subject property. In the comparables, Mr. Patecek made adjustments for location, size, topography and elevation, and time where he thought such to be proper.
Kermit Williams, a real estate appraiser of Baton Rouge, testified for the defendants. Using the market data-comparison method, he found the value to be $800.00 per acre, or a total of $14,745.00 as the total value of the property taken. Williams examined nine comparable sales of similar tracts of land in the area. All of his comparables were adjusted to bring them into greater comparability with the subject tract. The sales used as comparables ranged in value from $500.00 to $1,700.00 per acre. However, a size adjustment was necessary because the subject property was larger than the comparable sales. Adjustments were also made to take into consideration the difference in time, location, topography and access. He also used the sale from Parker to Harrison, which was the only comparable used by all four of the appraisers, and in so doing found an indicated value of $785.00 per acre for the Romano tract. In addition, Williams used the Bradley-Gross comparable which the plaintiff's appraisers had used. Williams used two different comparables, i.e., a July 15, 1970, sale from Matlock to Smith, involving four acres at a price of $8,500.00, or $1,700.00 per acre; and a December 9, 1970, sale from Davis to Bagley, in which 4.455 acres were sold at a price of $4,500.00, or $1,010.00 per acre.
The trial court concluded that the 18.43 acres taken by the Department had a value of $750.00 per acre as of the date of the taking, November 16, 1971.
The trial court pointed out that:
"The Department's two appraisers, Mr. Deano and Mr. Dowell, appraised the property at $500.00 and $525.00 per acre, respectively. The two appraisers for the landowners, Mr. Williams and Mr. Patecek, *226 appraised the property at $800.00 per acre and $750.00 per acre, respectively. "On behalf of the landowners, Mr. Patecek used all of the sales that involved tracts in excess of five (5) acres that took place during the one (1) year period prior to the date of the taking in this case. The Court particularly relies on the sale of Parker to Harrison and the resale by Harrison to Jackson. The Court notes that the evidence shows that the first sale involved a sale of forty (40) acres for approximately $500.00 per acre with a great deal of the 40 acre tract being low and marshy. The parent tract in this case had no low, marshy areas. The resale to Jackson was 20 acres for $531.00 per acre and a great deal of the 20 acres resold to Jackson was included in the low, marshy area."
The appellant contends that the trial court committed manifest error in reaching its conclusion, particularly complaining that the Patecek comparables were not as acceptable as the comparables used by the Department's appraisers. In his testimony Mr. Patecek fully explained his comparables, the adjustments that he made and how he arrived at his valuation of $750.00 per acre. He explained that he did not use the Bradley-Gross (1970) and King-Lindley (1968) sales because he found a sufficient number of comparables within the year of the taking. We have reviewed the adjustments made by Mr. Patecek and they are not subject to the criticism levelled at the adjustments in the case of State, Department of Highways v. Eichelberger, 141 So.2d 93 (La.App. 1 Cir. 1962). In Eichelberger the trial court had rejected the appraisal of the Department's expert because the appraiser admittedly used "arbitrary" adjustments. The appellate court found no manifest error in the trial court's rejection. There has been no "arbitrary" adjustments made by Mr. Patecek. The comparables used by the defendants' appraisers were valid comparables involving similar property in the particular area. There is no basis for the Department's claim that dissimilar properties were used by the landowners' appraisers.
We have thoroughly studied the appraisals and testimony of each real estate appraiser and conclude, as did the trial court, that the landowners' experts' reports are more persuasive than the Department's experts' reports as to the value of the property taken, since they show that each comparable was logically adjusted for size, time, topography and shape, and they selected more meaningful comparables.
The more reliable and approved method for determining the fair market value of property taken is to consider comparable sales, adjusting them to compensate for their relative good and bad features with regard to the property expropriated. See State, Department of Highways v. Bjorkgren, 147 So.2d 905 (La.App. 1 Cir. 1962).
Just compensation for property taken is the fair market value thereof according to its highest and best use, immediately prior to the taking, without any enhancement by virtue of the purpose of the taking. State, Department of Highways v. Hoyt, 284 So.2d 763 (La., 1973); State, Department of Highways v. Trippeer Realty Corporation, 276 So.2d 315 (La., 1973).
Under the "quick-taking" expropriations, such as this, the market value of the property taken is determined as of the time of the taking. LSA-R.S. 48:453, State, Department of Highways v. Trippeer Realty Corp., supra; see also State, Department of Highways v. William T. Burton Industries, Inc., 219 So.2d 837 (La.App. 3 Cir. 1969), writ ref. 254 La. 14, 222 So.2d 67 (La., 1969).
In an expropriation proceeding the trial court is not required to accept or reject the testimony of any particular witness, but may give whatever weight he considers appropriate to the testimony of any and all witnesses in making his factual determination of the value of the property taken. He may reach a conclusion which does not coincide with the testimony of any witness. State, Department of Highways v. Thurston, 338 So.2d 154 (La.App. 2 Cir. 1976); see also State, Department of Highways v. Salassi, 244 So.2d 871 (La.App. 1 Cir. 1971).
*227 The fixing of value of the property by the trial court will not be disturbed unless manifestly erroneous. See State, Department of Highways v. Romano, 316 So.2d 129 (La.App. 1 Cir. 1975). We find no manifest error in the instant case.
Severance Damages
The record shows that all witnesses who appraised the subject property considered that the remaining southern portion consisting of the 45.92 acres was detrimentally affected by the expropriation because said portion was left "landlocked," without access to a public road. See e.g., Rockholt v. Keaty, 256 La. 629, 237 So.2d 663 (1970). The Department's complaint is that the trial court manifestly erred in not awarding severance damages as calculated by its appraisers rather than by the landowners' appraisers.
The court concluded that the 45.92 acre tract had a value of $150.00 per acre as of the date of the trial, but that it would have had a value of $1,200.00 per acre were it not landlocked and, based upon those figures, fixed the damages at $1,050.00 per acre, or a total of $48,216.00 for that item.
The trial court stated in its reasons for judgment that:
"It appears to the Court that the landlocked portion in this case had at most a speculative minimal value of $100.00 per acre after the taking. The Court concludes that there is virtually no open market for this landlocked property. Perhaps an adjoining owner would be interested in the purchase of this property, but that is mere speculation and the adjoining owner could demand that he only pay a minimal price.
"The Court also reaches the conclusion that the landlocked portion did not increase in value from the date of the taking until the date of the trial. This is borne out by the lack of sales of landlocked parcels to other than adjoining owners. However, the Court feels that Mr. Williams' estimate of the value on the date of the trial of $150.00 per acre is the value to be used in determining severance damages."
Dowell used two sales of landlocked property to fix severance damages, first a sale from Vermillion to Landry on December 23, 1969, it being a 32.3-acre tract located about 1½ miles from the subject property; and second, a sale from McDonald to Graham on May 30, 1969, affecting an 18.07-acre tract located about 3/4 mile west of the subject property. Both were sales of landlocked property to abutting landowners. Dowell determined the Vermillion sale to be at $278.00 per acre and the McDonald sale to be at $250.00 per acre. His final estimate of severance damages of $12,629.00, based on the remainder having a value of $250.00 per acre as of November 16, 1974. He made no calculation as of the date of the trial.
Deano estimated the severance damages to be $13,722, based on the sales of other landlocked property, using a sale from Parenton to Templeton in October of 1968, in which 40 acres having no public access sold for $300.00 per acre, and the sale from Vermillion to Landry in January of 1970, in which 31 acres having no public access sold for $290.00 per acre. Deano took into consideration that Landry was an abutting landowner and estimated that from these two sales the subject remaining property would sell in the market for $200.00 per acre.
One of the landowners' appraisers, Patecek, used the "cost-to-cure" method to determine severance damages,[1] and estimated that the landlocked parcel would have little value after the taking. The trial court preferred the estimate of Kermit Williams, the other appraiser used by the landowners, who used the market data-comparison method. Williams fixed severance damages as $1,050.00 per acre, or total severance damages of $48,216.00, as of the date of the trial.
*228 The Department asserts that the trial court committed manifest error in not following the judicial method of calculating severance damages by calculating the difference between the fair market value of the remaining property immediately before and immediately after the taking. The appellant further asserts in this connection that the trial court erroneously fixed the fair market value as of the date of the trial, allowing for time increases in value from November 16, 1971, to April 15, 1975. The appellant is correct in its contention. As stated by the court in State, Department of Highways v. Babineaux, 189 So.2d 450 (La. App. 3 Cir. 1966):
". . . (T)he landowner is entitled to any severance damages sustained by the remainder of his property left after the taking, being the difference between the market value of such remainder just before the taking and its value at the time of trial. LSA-R.S. 48:453. State through Dept. of Highways v. Lancon, La.App. 3 Cir., 174 So.2d 257, and cases cited therein."
The statutory law in effect when this suit was filed provided, in part, that:

"Damage to the remainder of the property is determined as of the date of the trial." LSA-R.S. 48:453 (emphasis supplied).
Thus, one evaluation to be used in computing severance damages, i.e., the "before taking value" is "locked in" at the time of the taking and remains constant, but it is not judicially fixed until judgment. It is only the value of the property, in its affected state, that is allowed to fluctuate pursuant to the vicissitudes of the market until that amount is determined as of the time of trial.
Therefore, adopting the trial court's finding that the 45.92 acres had a value of $150.00 per acre at the time of trial, as compared to a value of $750.00 per acre at the time of the taking, the correct award for severance damages is $600.00 per acre, or $27,552.00. The judgment is amended to that extent.
Expert Witness Fees
Lastly, the Department challenges the award of expert witness fees, contending that the awards to Patecek and Williams were improper since they merely conform to the amounts agreed to between the appraisers and the defendants, and since neither appraiser testified as to the amount of time spent in the preparation for trial or in compiling his report. The trial court awarded fees of $1,800.00 and $1,700.00 for defendants' two expert appraisers, $50.00 for defendants' surveyor's court appearance and $625.00 for the cost of the survey. The Department argues these fees are excessive and cites several cases, including State, Department of Highways v. Whitman, 313 So.2d 918 (La.App. 2 Cir. 1975), writ den. 319 So.2d 443 (La., 1975); State, Department of Highways v. United Pentecostal Church of Hodge, 313 So.2d 886 (La.App. 2 Cir. 1975), writ den. 318 So.2d 60 (La., 1975), in support of its argument.
In expropriation proceedings, the condemning authority is taxed with the reasonable costs of the testifying expert witness retained by the landowner to help him obtain his just compensation. See State, Department of Highways v. William T. Burton Industries, Inc., supra, at 845.
There are several principles of law applicable in determining expert witness fees. The amount of time consumed and the amount charged the landowner are only some of the factors to be considered in determining the fee of an expert. State, Department of Highways v. Oil Mark Corporation, 324 So.2d 606 (La.App. 2 Cir. 1975), writ den. 326 So.2d 380 (La., 1976). Fees to be paid to expert appraisers are based not only upon their court appearance, but also upon their preparatory work. State, Department of Highways v. William T. Burton Industries, Inc., supra, at 845. However, time spent in consultation which only assists the landowner's counsel in preparing for the litigation can not be taxed as court costs. State, Department of Highways v. Whitman, supra, at 925.
*229 In assessing expert witness fees, each case must be decided on its own peculiar facts. However, in order to change the amount awarded as expert fees, the appellate court must find that the trial judge abused the sound discretion properly accorded him in such matters.
In the instant case, the appraisals and trial testimony of both of the defendants' experts speak for themselves. Both are indicative of a great deal of preparation and expertise and could not have been accomplished without considerable time and effort on their part. In view of the expertise of the appraisers, the time spent on their appraisals, the difficulty of the appraisal, the amount involved in the award, and the degree to which the appraisals aid the court in its decision, we find no abuse of discretion in the awards.
The Department's complaint about the assessment of an expert fee for the surveyor is without merit. It was squarely held in State, Department of Highways v. William T. Burton Industries, Inc., supra, at 846, that a surveyor witness' fee for his court appearance and preparatory work connected therewith is taxable as court costs. We find no manifest error in the award for expert witnesses.
For the foregoing reasons, the judgment of the trial court is amended by reducing the severance damages to $27,552.00; it is otherwise affirmed. The Department shall pay all costs for which it may be legally assessed.
AMENDED AND AFFIRMED.
NOTES
[1] The use of this method for such purposes is limited to ". . . a most unique situation. . . wherein the ascertainment of market value of the facility is not possible." State, Department of Highways v. Mason, 254 La. 1035, 229 So.2d 89 (1969).