PETERS, Judge ad hoc.
This suit arises out of an automobile-truck collision that occurred on Louisiana Highway No. 1 north of Raceland, Louisiana, on October 1, 1970, in which Miss Dorothy Luquette was killed. Plaintiffs are the parents of the deceased who originally sued Robert M. Decker II, Insurance Company of North America, Decker’s liability insuror, and Travelers Indemnity Company, liability insuror of the Louisiana State Police. During the course of the trial, plaintiffs dismissed their suit against Decker and Insurance Company of North America, leaving Travelers Indemnity Company as the only defendant. The case was tried on its merits before the district court judge who rendered judgment with written reasons in favor of defendant, dismissing plaintiff’s suit. Plaintiffs have appealed from this judgment and additionally allege the trial judge was in error in dismissing plaintiffs’ motion for trial by jury.
Louisiana Highway No. 1 parallels Bayou Lafourche along its west or right descending bank. The Bayou and Highway 1 run generally north and south. The asphalt surface of Highway 1 is 24 feet wide, with one northbound lane and one southbound lane of traffic.
South of the point of impact is a series of curves along Highway 1, but the accident occurred on a straight stretch .09 miles long. At a distance of .04 miles into the straight stretch, there is a small bridge over a drainage ditch known locally as the Theriot Canal. The bridge is 126 feet long and is of the same width as the asphalt surface of Highway 1. The impact occurred approximately 305 feet north of the bridge.
Prior to the accident Miss Luquette was driving her 1962 Falcon south along Highway 1 in the direction of Raceland. Robert Mallette was driving a large tractor-trailer tandum rig north along Highway 1. Following Mallette in a police vehicle was Lieutenant Elmo Falgout, a shift supervisor for Troop M of the State Police. Following Lieutenant Falgout and the tractor-truck was Robert M. Decker II.
Prior to reaching the bridge over the drainage ditch Lieutenant Falgout began a passing maneuver around the tractor-truck. It was a disputed fact as to what point Falgout returned to his passing lane but the evidence establishes that he had completed his passing maneuver and was pro *572 ceeding northward in the northbound lane before the collision occurred. Falgout met and passed Miss Luquette’s automobile and shortly thereafter Miss Luquette’s car began to act abnormally. A short distance before the point of impact, the right wheels of her vehicle left the asphalt surface and her car then veered back across the southbound lane abruptly into the path of the tandum rig. The collision occurred in the northbound lane. Miss Luquette was killed instantly. There was nothing in the record to indicate that any of the drivers were speeding and the weather conditions were good.
Plaintiffs contend that the accident resulted from the negligence of Lieutenant Falgout in passing the tandum rig when the highway in front of him was not clear for a sufficient distance to allow him to pass in safety and that his improper maneuver caused Miss Luquette to lose control of her vehicle and collide with the oncoming tractor-truck.
Lieutenant Falgout testified that he had been following Mallette’s tandum rig during the series of curves south of the point of impact and had been waiting for an opportunity to pass on a straight stretch of road. He stated that when he rounded the curve south of the bridge he ascertained that the road was clear and accelerated from a speed of 45 miles per hour to 55-60 miles per hour to pass the truck. He testified that he passed the tandum rig and returned to the northbound lane before he reached the south end of the bridge. He stated that Miss Luquette’s automobile was at all times a safe distance from him in the southbound lane. He stated that he was well past Miss Luquette when the impact occurred and noticed the collision only when he looked in his rear view mirror. Falgout testified, and the evidence established, that he met and passed the Luquette automobile in a normal manner.
The deposition of Mallette was placed in evidence by stipulation. Mallette’s version of the accident substantiated the testimony of Falgout. Mallette stated the road ahead was clear when Falgout began his passing maneuver and by the time Falgout reached the bridge the police car was more in the northbound lane than in the southbound lane. He testified that Falgout had met and passed the Luquette vehicle without incident and was continuing northward before the Luquette car ran off the road.
Decker was of the opinion that Falgout was abreast of the truck on the bridge during his passing maneuver and returned to the northbound lane as he passed the north end of the bridge. He stated that he could see the Falgout car as Falgout was passing the truck but was unable to give an estimate of the distance between the Luquette automobile and the Falgout car when Fal-gout was in the act of passing.
Joel F. Pierce testified that he witnessed the accident while following approximately 70-100 yards behind the Luquette automobile. Pierce stated in his opinion Falgout was on the bridge when he began passing Mallette and completed the maneuver approximately 350 feet north of the bridge. He stated Falgout’s car made a swerving motion as it returned to the northbound lane. He testified that after the accident he turned his automobile around and switched on his lights to warn approaching motorists of the accident.
In his well written reasons, the trial court chose to accept the testimony of Fal-gout and Mallette over that of Pierce and Decker as to how the accident occurred. The trial judge particularly was not impressed with the testimony of Pierce and entertained some doubt as to whether this witness had actually viewed the accident. There is merit to this observation in light of positive testimony from both Falgout and Mallette that no vehicles were following the Luquette car prior to the impact. Additionally, no one could remember seeing Pierce at the scene, including State Trooper Eugene DeGruise, Jr., investigating officer of the accident, who testified that he had attempted to find eye witnesses at the *573 scene in order to obtain statements. In any event, our review of Pierce’s testimony shows that it is fraught with inconsistencies and we accept the conclusion of the trial court in rejecting this witness’s testimony.
The trial judge held the evidence established that Falgout had completed his passing maneuver before he reached the south end of the bridge and within ample time prior to his meeting and passing the Lu-quette automobile. He also was of the opinion that the Falgout and Luquette vehicles met and passed without incident and that the abnormal behavior of Miss Lu-quette’s automobile began only after their meeting. It was his opinion that Lieutenant Falgout was without fault in causing the accident and that the sole cause of the collision was the negligence of Miss Lu-quette in allowing her car to proceed into the oncoming tractor-truck.
It is obvious that the trial judge’s findings of fact rested upon his determination as to the credibility of the witnesses that testified. We have repeatedly held that, in the absence of manifest error, the trial judge’s findings of fact will not be disturbed, particularly if the outcome was influenced by the credibility of the witnesses who came before him. After a careful reading of the evidence presented, we find no error therein.
Finally, plaintiff argues that the -trial court was in error in dismissing plaintiffs’ motion for trial by jury. In plaintiffs’ original petition they prayed for jury trial on all issues. By order of court dated January IS, 1971, the case was set for trial on the merits on November 22, 23 and 24, 1971. On October 13, 1971, defendant Travelers Indemnity Company issued a rule to show cause as to why a jury trial should not be ordered based upon the contention that since Travelers Indemnity Company was the insuror of a department of the State of Louisiana, defendant was exempt from a jury trial. This rule was heard on November 2, 1971, and the court overruled defendant’s objection. On November 5, 1971, the court issued an order granting plaintiffs a trial by jury predicated upon plaintiffs furnishing bond in the amount of $1,000.00. On that same date, plaintiff posted the $1,000.00 bond with the Clerk of Court. On November 9, 1971, a motion for a venire facias was filed by plaintiffs and the proper order was issued by the trial court. On November 22, 1971, the date set for the trial, defendant Travelers Indemnity Company objected to a jury trial and moved for a dismissal on the ground that plaintiffs had not deposited the $12.00 statutory jury fee required by LSA-R.S. 13:3050. Argument on the motion was postponed until the next day, and at that time the trial court upheld the motion and ruled that under the provisions of LSA-R.S. 13:3050 plaintiffs had forfeited their right to a jury trial by their failure to pay the $12.00 deposit. The court then informed all counsel that the case would be continued until a later date to be tried without a jury. Counsel for plaintiffs strenuously objected to this procedure and reserved all rights to seek supervisory writs to the appellate courts on the issue. However, counsel for plaintiffs then decided to try the matter before the trial judge and the case proceeded on that date. Plaintiffs now argue that they were prejudiced by the trial court’s. ruling and contended that the trial judge had the discretion to permit them to pay the deposit on the day set for the .trial.
Whatever merits there may be to his argument, it is our opinion that plaintiffs waived their right to have this matter heard on appeal by their acquiescence in trying the matter on the date in which the motion was denied. It should be noted that at the time of the ruling the trial judge did not dismiss the plaintiffs’ suit or force counsel for plaintiffs to trial without a jury. The trial judge specifically allowed the plaintiffs the right to seek supervisory writs to the appellate courts to determine whether in fact they were entitled to a jury trial. Having failed to do *574 this, and by continuing with the trial to judgment, the plaintiffs have acquiesced in the judgment rendered and cannot now appeal from it. See LSA-C.C.P. Art. 2085.
Accordingly, for the foregoing reasons, the judgment appealed is affirmed, at appellant’s cost.
Affirmed.