557 So.2d 731 (1990)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Plaintiff-Appellant,
v.
Nell Carter Ramage WILLIAMSON, et al, Defendants-Appellees.
No. 21181-CA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 1990.
Rehearing Denied March 29, 1990.
*732 Harvey Lee Hall, Baton Rouge, Bertrand & Soileau by Charles Soileau, Rayne, for plaintiff-appellant.
Blackman, Arnold & Pettway by John H. Dixon, Jr., Snellings, Breard, Sartor, Inabnett & Trascher by Phillip McIntosh, Monroe, John B. Knight, Jr. Winnsboro, for defendants-appellees.
Before HALL, MARVIN and LINDSAY, JJ.
LINDSAY, Judge.
In this appropriation suit, the state has appealed from the trial court judgment in favor of the defendants, granting them additional compensation and attorney fees. The defendants have answered the appeal. For the following reasons, we affirm the trial court judgment in part, vacate in part, and remand for further proceedings.

FACTS
This case concerns an action by the state to expropriate a long, narrow strip of land, formerly comprising a railroad right-of-way, in Winnsboro, Louisiana. The purpose of the expropriation was to allow the state to widen Louisiana Highway 15. The state filed a petition to expropriate the property on May 27, 1983, naming as defendants the Missouri Pacific Railroad Company and other unknown owners of the land involved. On that same day, the order of expropriation was signed and filed. Pursuant to that order, the state paid into the registry of the court funds to compensate the owners for the value of the land taken.
It was subsequently learned that Missouri Pacific Railroad Company had abandoned its claim to the right-of-way. Thereafter, several individuals claiming ownership of the property came forward and asserted their right to the expropriation funds. Insofar as this case is concerned, those persons claiming an ownership interest were Nell Carter Ramage Williamson, Rowena P. Ramage, Charles L. Ramage, Julian H. Adams and Charles Ramage Adams.
In order to simplify the litigation, each of these individuals created an inter vivos trust, naming themselves as beneficiaries, and assigning to the trusts, all their right, title and interest in the disputed property. The trustees were then substituted as party defendants.
The defendants filed answers and reconventional demands, claiming ownership of the disputed property. They also claimed that the amount paid into the registry of the court was not sufficient to compensate them for the property.
The state filed requests seeking to have the case tried by jury. However, the trial court subsequently determined that the state's requests for jury trial had not been timely filed. Therefore, the trial court ruled that the state had waived its right to a trial by jury. The state did not apply for writs from this decision and the matter proceeded to trial before a judge alone.
In the trial court, the issues of ownership and the amount of compensation were tried separately. The issue of ownership of the land was tried first. The land at issue in this case was divided into three parcels. These parcels were designated as parcels A, B and C. The ownership portion of this case was tried on November 9, 1987. On February 19, 1988, the trial court signed and filed a judgment finding that parcel A was owned in indivision by Charles Ramage Adams and Julian H. Adams, in the proportions of an undivided one-fourth interest *733 each, and by Charles L. Ramage, Rowena P. Ramage and Nell Ramage Williamson, in the proportions of an undivided one-sixth interest each.[1]
As to parcels B and C, Nell Ramage Williamson, Rowena P. Ramage and Charles L. Ramage were each found to be the owners of an undivided one-third interest.
The issue as to the value of the land was tried later and is the basis for this appeal. This portion of the trial took place on October 31-November 3, 1988. At trial, the state presented the testimony of its expert appraiser. The defendants presented testimony from two expert appraisers. Trial on the matter concluded November 3, 1988. At the conclusion of the trial, the trial court rendered judgment in favor of the landowners, setting the value of the property and awarding interest, costs, and attorney fees. The trial court judgment was signed on December 20, 1988.
The court found that parcel A had a value of $628,000, subject to a credit of $147,509, which the state had already paid into the registry of the court. This left a balance due the defendants of $480,491. The court also ordered that legal interest was due on $480,491 from the date of taking on May 27, 1983, until paid, plus twenty-five percent attorney fees. The twenty-five percent attorney fees were computed on "the aggregate of $480,491 and legal interest on $480,491 from May 27, 1983 through November 3, 1988."
The court found that parcels B and C together had a value of $787,500, subject to a credit of $246,820.50 already paid into the registry of the court. The court awarded the owners of this property the balance of $540,679.50, plus legal interest on that amount from May 27, 1983, until paid, plus twenty-five percent attorney fees. The twenty-five percent attorney fees were computed on "the aggregate of $540,679.50 and legal interest on $540,679.50 from May 27, 1983 through November 3, 1988."
The defendants' two expert appraisers were each awarded $7,500 in expert witness fees. These amounts were taxed as costs.
The state appealed the judgment and the defendants have answered the appeal.

JURY TRIAL
The DOTD argues that the trial court erred in denying its request for trial by jury. The DOTD acknowledges that under LSA-R.S. 48:451.2, it may demand a jury trial no later than fifteen days after service upon the Department of an answer filed by the defendant.
Nell Ramage Williamson, individually, filed an answer on January 18, 1985.[2] The DOTD contends it mailed its request for jury trial to the clerk of court on January 29, 1985, within the fifteen day time limit. The trial court signed an order granting the request on February 7, 1985. The order was not actually filed in the record until February 8, 1985.
The other defendant-trusts were substituted as parties to the suit and filed an answer to the expropriation petition on November 18, 1985. The DOTD mailed a new request for jury trial on November 26, 1985. The trial court again signed an order granting the request on December 9, 1985. This order was filed in the record on December 11, 1985.
On February 29, 1988, the defendants filed a rule to show cause why the DOTD had not waived its right to trial by jury. The defendants contended that the DOTD's requests for jury trial were not filed within the fifteen day time limit set forth in LSA-R.S. 48:451.2. After a hearing on the rule to show cause, the trial court agreed that the DOTD had failed to timely file both requests for trial by jury. Therefore, the trial court ruled that the DOTD was not entitled to a jury trial. On appeal, the *734 DOTD argues that both of its requests for jury trial were timely because they were mailed within fifteen days of the defendants' pleadings. Alternatively, the DOTD urges a "boot strap" theory, arguing that when the second answer was filed by the substituted defendants, the first request for jury trial was present in the suit record and, at that point, became effective as to all defendants.
We find it unnecessary to decide whether the state's requests for jury trial were timely, for we find that under the facts presented in this case, the DOTD waived its right to seek review of the trial court's ruling denying its requests for jury trial.
We have traditionally held that an order denying a jury trial is an interlocutory order which is not appealable absent a showing of irreparable harm and that an application for remedial or supervisory writs is the appropriate method to seek review of such an interlocutory order. Hunter v. Health & Social & Rehabilitative Services, 372 So.2d 577 (La.App. 2d Cir.1979); Ruston State Bank & Trust v. Theodus, 366 So.2d 218 (La.App. 2d Cir. 1978), writ denied 369 So.2d 1367 (La.1979); American Bank & Trust Company v. Til, 340 So.2d 636 (La.App. 2d Cir. 1976), writ denied 342 So.2d 1111 (La.1977).
Parties are generally deemed to have waived their right to have the jury trial issue resolved on appeal when they acquiesce in having the matter heard by a judge alone. Luquette v. Decker, 273 So.2d 570 (La.App. 1st Cir. 1973), writ denied 276 So.2d 702 (La. 1973).
Even if a party is incorrectly denied a jury trial, it does not follow that the outcome of the case on the merits will be different or erroneous. "Judges are at least as competent as juries to try cases. Facts and law are subject to appellate review and errors on the merits may be corrected, whether a case is tried by a judge or jury." Hunter v. Health & Social & Rehabilitative Services, supra.
In the present case, after the trial court ruled on March 17, 1988, that the DOTD had not timely filed its requests for a trial by jury, the DOTD did not apply for writs to this court. Rather, the DOTD acquiesced in the trial court judgment and proceeded to trial before a judge alone. We conclude, in accordance with the authority discussed above, that a litigant in a civil case, who, absent compelling circumstances, fails to seek supervisory review of a trial court's denial of its request for jury trial, will be deemed to have waived the right to appeal that issue, following a trial on the merits before a judge alone. In this case, by failing to apply for supervisory writs from the trial court denial of its request for jury trial, the DOTD has waived its right to have the issue considered on appeal.

ATTORNEY FEE AWARD
The DOTD objects to the amount which the trial court awarded the defendants for attorney fees, as well as the manner in which the trial court made the attorney fee calculation. The trial court awarded the defendants attorney fees of twenty-five percent. The twenty-five percent was calculated on the combined amount of the excess award and legal interest on that amount, from May 27, 1983 through November 3, 1988.
The DOTD contends that the award of twenty-five percent in attorney fees is excessive and unreasonable. The DOTD also contends that the trial court erred in calculating attorney fees on both the excess award and accrued interest.

Calculation of Attorney Fees On Excess Award and Interest
The DOTD argues that the trial court erred in including interest with the excess award and then awarding attorney fees based upon this combined amount. The DOTD contends that the trial court should have calculated its attorney fee award only on the amount of the excess award.
This same issue was considered in East Baton Rouge Parish v. Hays, 527 So.2d 1088 (La.App. 1st Cir.1988), writ denied 532 So.2d 152 (La.1988).
*735 In that case, the court reasoned that under LSA-R.S. 48:453, attorney fees are to be awarded on compensation, and, under LSA-R.S. 48:455, compensation includes interest. Therefore, the court held that attorney fees could be calculated upon the combined sum of the excess award and interest on that amount, from date of judicial demand, until paid.[3]
Even though LSA-R.S. 48:455 and 456 were amended by Acts of 1988, No. 882, the amendments to those provisions do not change the reasoning of East Baton Rouge Parish v. Hays, supra. We find that the reasoning of Hays is correct, as applied to the facts of this case. Therefore, we find that the trial court did not err in calculating attorney fees on the excess award, plus interest.
However, we note the trial court computed the attorney fee based upon interest accruing from May 27, 1983, the date the property was taken, and ending November 3, 1988, the date judgment was rendered in open court. We fail to find authority for the time limit applied by the trial court. Therefore, the award of attorney fees, if ultimately based upon a percentage, should be based upon the excess award plus interest, from date of taking by the DOTD until paid.[4]

Amount of Attorney Fee Award
The DOTD also contends that the trial court erred in assessing an excessively high attorney fee award of twenty-five percent.
A prevailing party in litigation is not entitled to attorney fees unless authorized by statute or contract. State, Through the Department of Transportation and Development v. Tynes, 433 So.2d 809 (La. App. 1st Cir.1983), writ denied 437 So.2d 1153 (La.1983). In expropriation cases, LSA-R.S. 48:453(E) provides statutory authority for such awards. That statute provides:
Reasonable attorney fees may be awarded by the court if the amount of the compensation deposited in the registry of the court is less than the amount of compensation awarded in the judgment. Such attorney fees in no event shall exceed twenty-five percent of the difference between the award and the amount deposited in the registry of the court.
In making such an award, the trial court is vested with much discretion and the award will not be disturbed in the absence of a clear abuse of that discretion. State, Through the Department of Transportation and Development v. Clark, 548 So.2d 365 (La.App. 2d Cir. 1989); State, Through the Department of Transportation and Development v. Tynes, supra; State, Through the Department of Transportation and Development v. Van Willet, 389 So.2d 1346 (La.App. 3rd Cir.1980); State, Through the Department of Transportation and Development v. Frabbiele, 391 So.2d 1364 (La.App. 4th Cir.1980).
Even though LSA-R.S. 48:453(E) grants the trial court authority to make a reasonable attorney fee award, not to exceed twenty-five percent, such awards are still subject to review and control by the courts. *736 Therefore, it is the duty of the reviewing court to determine if the attorney fee award is reasonable and is not an abuse of the trial court's discretion. State, Through the Department of Transportation and Development v. Tynes, supra.
Factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge. State, Through the Department of Transportation and Development v. Jacob, 491 So.2d 138 (La.App. 3rd Cir.1986), writ denied 496 So.2d 331 (La. 1986); State, Through the Department of Transportation and Development v. Hecker, 493 So.2d 125 (La.App. 5th Cir. 1986), writ denied 494 So.2d 325 (La.1986); State v. Ransome, 392 So.2d 490 (La.App. 1st Cir.1980).
In many cases, trial courts have awarded the maximum amount of twenty-five percent and such awards have been affirmed on appeal. See State, Through the Department of Transportation and Development v. Clark, supra; State, Through the Department of Transportation and Development v. Stephenson, 480 So.2d 909 (La.App. 2d Cir.1985); State, Through the Department of Transportation and Development v. Schexnayder, 485 So.2d 939 (La.App. 1st Cir.1986); State, Through the Department of Transportation and Development v. Frabbiele, supra; State, Through the Department of Transportation and Development v. Hecker, supra. However, when it appears that an attorney fee awarded by the trial court may be unreasonable, the appellate court can either remand for the purpose of permitting evidence to be offered in connection with the amount of attorney fee to be awarded when the record contains insufficient evidence to form the basis for awarding a reasonable attorney fee, or the court may consider the services performed by the attorney and the circumstances and after reviewing the record, fix a reasonable attorney fee. State, Through the Department of Transportation and Development v. Tynes, supra.
In the present case, it is difficult to determine what basis was used by the trial court in setting the maximum allowable attorney fees. When the trial judge first gave his oral reasons for judgment, he failed to make an award of attorney fees. When this omission was mentioned, he then awarded attorney fees, apparently, based simply on what he had done in other cases. The court stated, "the court in the past has fixed an attorney's fee of twenty-five percent of the amount of the award. I will maintain that as reasonable attorney's fees."
The amount of attorney fees awarded in this case appears to be unreasonable in light of the value of the property and the accrued interest. The rate of judicial interest was fixed by law at twelve percent per annum beginning in 1981 and running through January 1, 1988. After January 1, 1988 the interest rate was designed to fluctuate, but in no instance can it exceed fourteen percent. LSA-C.C. Art. 2924. In considering that the defendants in this case received an aggregate excess award of $1,021,170, and the property was taken in 1983, approximately seven years ago, a twenty-five percent attorney fee at this point in time, based upon the excess award and accrued interest, would exceed four hundred thousand dollars. Unless the trial court can provide substantial reasons for such an award, this sum appears to be unreasonable.
The record contains no evidence specifically relating to the amount of effort expended, the amount of time involved, or any other evidence from which we can determine, on review, the reasonableness of this attorney fee award. Because of the lack of evidence, we believe the attorney fee award should be fully considered by the trial court. The trial court is in a better position to make this determination, based upon evidence in the record and for articulated reasons. Therefore, we must set *737 aside the twenty-five percent attorney fee award and remand the case to the trial court for the limited purpose of permitting evidence to be offered in connection with the amount of attorney fees to be assessed. Cf. State, Through the Department of Transportation and Development v. Frabbiele, 372 So.2d 234 (La.App. 4th Cir. 1979).

VALUE OF EXPROPRIATED PROPERTY
The property expropriated in this case was comprised of a strip of land approximately 100 feet wide and 11,000 feet long, beginning on Steele Street, in the heart of downtown Winnsboro, Louisiana, and extending north to Bull's Bayou, also known as Mayhaw Slough, outside the city limits. The property was divided according to legal description and ownership into parcels A, B, and C.
Parcel A runs from Steele Street to Kinloch Street. Parcel B runs from Kinloch Street to the Winnsboro city limits. Parcel C runs from the city limits to Mayhaw Slough. On May 27, 1983, the DOTD deposited into the registry of the court sums estimated to be the full value of parcels A, B and C.
As to parcel A, estimated to contain 295,018 square feet, the DOTD valued the property at $.50 per square foot and deposited $147,509 into the court registry.
Parcel B was estimated to contain 488,337 square feet and was valued at $.50 per square foot. The sum of $224,168.50 was deposited by the DOTD to cover this loss.
Parcel C was estimated to contain 8.84 acres and was valued at $300 per acre. The DOTD deposited $2,652 into the court's registry to cover this loss.
At trial, the defendants presented the testimony of two expert real estate appraisers, Robert Lowe and Donald R. Lockard, to show that the amounts deposited by the DOTD were not sufficient to compensate for the loss of parcels A, B and C. The state presented the testimony of James C. McNew, also a real estate appraiser.
All the experts appraised the property as of the date of taking, May 27, 1983. All three experts arrived at similar estimates for the gross value of the property. Mr. Lowe's gross value of the property was $2,282,318. Mr. Lockard's gross value of the property was $2,215,550. Mr. McNew's gross value of the property was $2,056,700. However, the various discount rates and sell off periods used by the three experts resulted in different valuations of the property.
Mr. Lowe used a market data or market comparable approach in valuing the property. He examined comparable sales of property in the area of parcels A, B and C and then applied various discount rates to arrive at a final value. As to parcel A, Mr. Lowe applied a 10 percent discount because this property is only 100 feet wide. Mr. Lowe testified that the narrow width of the property would affect its value because it would limit the purposes for which the property could be utilized. Mr. Lowe also estimated it would take approximately ten years to sell this property. Therefore he applied an additional five percent discount rate to provide for holding costs during the sell off period. He then determined the present value of parcel A to be the sum of $636,000.
As to parcel B, Mr. Lowe divided the property into three tracts. He applied the ten percent discount factor only to tracts two and three, finding that the width limitations did not apply to tract one. He applied a five percent discount rate to the whole property to account for a ten year sell off period. Based upon these factors, he valued parcel B at $722,900.
Parcel C was not discounted for width limitations, but a five percent discount was applied to account for a ten year sell off period. After applying this factor, Mr. Lowe then valued parcel C at $202,400.
Mr. Lockard used a developmental income approach in valuing the property. He found that the property in town would require approximately five years for development, therefore, in valuing the property, he factored in five percent holding costs. He determined the value of parcel A to be *738 $620,000. He valued parcel B at $258,480 and parcel C at $852,000.
Mr. McNew found that the highest and best use of this property would be to sell the property to a single developer who would then subdivide the property and sell it in 100 foot lots. He subtracted estimated developmental costs, sales expenses, property taxes and the developer's profit. He then applied a twelve percent discount factor to arrive at a present value of $833,227 for the property as a whole. Mr. McNew did say that the property located in downtown Winnsboro would sell more quickly than the rural property outside the city limits. However, he did not subdivide the property into parcels A, B and C, and, therefore, he did not assign a separate value for each of the parcels.
After hearing all the evidence bearing on the value of the property, the trial court found that the total value for parcels A, B and C was $1,415,500, subject to a credit for amounts already paid into the registry of the court by the DOTD. Upon recognizing that parcel A had different owners from parcel B and C, the court set the value for parcel A at $628,000. Parcels B and C were valued at a total of $787,500.
The court reasoned that all the appraisers' gross valuations of the property were very nearly the same, but that the biggest difference came in the amounts which each expert thought should be deducted from the gross figures. The court stated that on some points it disagreed with all three experts. The court found that Mr. Lockard did not allow enough for developmental costs and that his discount factor of five percent was too low. The court also disagreed with Mr. McNew's theory in which all the property would be sold to a single buyer who would then subdivide the property. The court found that this method resulted in the lowest value of the property. The court also found that Mr. McNew's twelve percent discount was too high.
In reaching the final value to be placed upon all parcels, the court stated that Mr. Lowe's appraisal was the most accurate, and was closer to the court's opinion of the value of the property. However, the court found that the value assigned by Mr. Lowe was a little too high and that his five percent discount rate was too low. Then, without specifying what discount factors or other factors had been applied by the court, the court set the total value of all tracts at $1,415,000.
On appeal, the state argues that the trial court erred in assigning an excessively high value to the property. The Ramage trusts and the Williamson trust contend that the valuation assigned by the trial court to parcels B and C was too low.
The Charles Adams trust and the Julian Adams trust contend that the trial court erred in assigning a value to parcel A which was too low. They claim that their property, comprising parcel A, was worth more because it was located in the heart of Winnsboro. They also claim that Mr. McNew, the state's appraiser, testified that this portion of the property would probably sell within three years. Their own expert estimated this property would sell within seven years. They claim that they are entitled to the more favorable sell off period of three years and therefore the value of the property should be recalculated to reflect this factor. They claim that under such a recalculation, they would be entitled to an additional $44,000 for parcel A.

Law
In an expropriation proceeding, the trial court is not required to accept or reject the testimony of any particular witness, but may give whatever weight it considers appropriate to the testimony of any and all witnesses in making its factual determination of the value of the property. The trial court may reach a conclusion which does not coincide with the testimony of any witness. State, DOTD v. Mayet, 521 So.2d 671 (La.App. 1st Cir.1988); State, DOTD v. Romano, 343 So.2d 222 (La.App. 1st Cir.1977); State, DOTD v. Fakouri, 541 So.2d 291 (La.App. 3rd Cir. 1989); State, DOTD v. Stumpf, 519 So.2d 279 (La.App. 5th Cir.1988), writ denied 520 So.2d 753 (La. 1988).
Expert opinions as to value are not binding on the trier of fact. They are not ordinarily conclusive and generally are regarded *739 as advisory in character. The purpose of such opinion is to assist the court in its effort to determine the ultimate facts. State, DOTD v. Stump, supra. Where experts disagree as to the value of property taken, the trial court has much discretion in evaluating and determining the weight to be given the testimony of each expert. State, DOTD v. Stumpf, supra; State, DOTD v. Fakouri, supra. State, DOTD v. Landry, 507 So.2d 252 (La.App. 3rd Cir.1987), writ denied 513 So.2d 290 (La.1987).
Much discretion is also granted the trial court in determining the value of land in expropriation cases and the fixing of value will not be overturned on appeal absent a showing of abuse of discretion. State, DOTD v. Mayet, supra; State, DOTD v. Romano, supra.

Discussion
In the present case, the trial court was faced with conflicting testimony by the expert appraisers as to the discount factors to be applied to the gross value of the property. Acting with the abundant discretion afforded the trial court to weigh the testimony of experts and to value property, the court rejected parts of the expert testimony and accepted other parts. The trial court found that Mr. McNew's method of valuing the property resulted in an appraisal which was too low and a discount rate which was too high. Cf. State, DOTD v. Hammons, 550 So.2d 767 (La.App. 2d Cir. 1989).
The court found that the five percent discount factor applied by Mr. Lowe and Mr. Lockard was too low. The court then arrived at a middle ground in valuing the property. Mr. Lockard assigned a value of $620,000 for parcel A and a total of $1,110,480 for parcels B and C. Mr. Lowe assigned a value of $636,000 for parcel A; parcels B and C were found to have a combined value of $925,300.
The court valued parcel A at $628,000. The total value of parcels B and C was set at $787,500.
Based upon the facts before this court on review, we cannot say that the trial court abused its discretion in the valuation placed upon this property. The trial court carefully weighed the expert opinions of the appraisers, and considered those opinions along with other evidence in the case. The totality of the evidence reveals that the value placed upon the the expropriated property was well within the trial court's discretion. Therefore, the trial court judgment setting the value of the expropriated property is affirmed.

CONCLUSION
For the reasons stated above, we find that the DOTD waived its right of review of the jury trial issue in this appeal. We affirm the trial court's manner of calculating attorney fees, but remand for the limited purpose of determining whether a twenty-five percent attorney fee was reasonable under the facts of this case.
We affirm the amount awarded to the defendants by the trial court for the value of the expropriated property. All costs are assessed against the DOTD.
AFFIRMED IN PART, VACATED IN PART AND REMANDED.

ON APPLICATION FOR REHEARING
Before HALL, MARVIN, LINDSAY, SEXTON and NORRIS, JJ.
Rehearing denied.
NOTES
[1] We note that, although the trial court found the above named individuals to be owners of the property, in fact, the inter vivos trusts created by these individuals were the holders of all the "right, title, and interest" to the property.
[2] The Nell Carter Ramage Williamson inter vivos trust was later substituted as a defendant in this litigation.
[3] This is distinguished from allowing interest to accrue on an attorney fee award. It is well settled that interest is to accrue only on the amount of compensation awarded above that deposited into the registry of the court. Interest does not accrue on attorney fees. LSA-R.S. 48:455, State, Through the Department of Transportation and Development v. Taylor, 461 So.2d 1282 (La.App. 3rd Cir.1985), writ denied 464 So.2d 1382, 1383 (La.1985); State, Through the Department of Transportation and Development v. Townsend, 473 So.2d 99 (La.App. 3rd Cir. 1985), writ denied 477 So.2d 712 (La.1985).
[4] There is no indication in the record that the trial court was exercising its discretion in limiting the running of interest in order to limit the amount of attorney fees.

Also, we note that, as set forth above, LSA-R.S. 48:455 was amended in 1988. Pursuant to that amendment, legal interest is to accrue from the date of legal demand. However, at the time this property was taken and the present litigation commenced, that statute provided that legal interest accrues from the date of taking. Because the change in the statute affects substantive rights, it will not be applied retroactively. Therefore, interest in this case will accrue from the date of taking by the DOTD. We decline to follow the reasoning of the Fifth Circuit Court of Appeal in State, DOTD v. McClendon, 552 So.2d 1220 (La.App. 5th Cir.1989).