MARVIN, Judge.
The State DOTD appeals judgments in consolidated actions under the quick-taking highway expropriation statute that awarded the landowners additional compensation and severance damages. The State contends that the landowners did not prove any severance damages and that legal interest should have been awarded from the date of each landowner’s demand for additional compensation rather than from the date of the taking.
We affirm.
FACTS
The State brought the action in May 1983 to acquire about 300 acres of land approximately 100 feet wide in Franklin Parish to widen La. Hwy. 15. DOTD took 1.7 acres from a 20-acre tract owned by Eva Lewis Lanier, and 3.3 acres from an adjoining 40-acre tract owned by Joy Lewis LeBleu and David LeBleu, all of whom are defendants-appellees. Both tracts are undeveloped rural lands a few miles south of Winnsboro. The five acres taken from these landowners were at some earlier time wholly or partly within the right-of-way of a railroad which paralleled Hwy. 15.
At some unspecified time after the 1983 taking and before the 1989 trial, the State built a new four-lane Hwy. 15 some distance to the west of the old highway and redesignated the old highway as Hwy. 3210. At trial, the State had no plans to use the 100-foot strip that was taken in 1983 for the proposed widening of old Hwy. 15.
The Lanier and LeBleu claims for additional compensation and severance damages were consolidated for trial. The landowners’ appraiser, Robert Lowe, found the highest and best use of the property taken, five acres, to be residential. He also opined that the highest and best use of the first 300 feet, or about 15 acres, of the land remaining after the taking would be for residential purposes, with the highest and best use of the rest of the parent tracts, about 40 acres, being agricultural.
Lowe testified that he searched the public records and found no dedicated right-of-way affording highway access to the land remaining after the taking. He opined that the lack of access damaged the remaining residential acreage but did not damage the agricultural acreage. He attributed some damage to the remaining land to the fact that the State had indicated it had no plans to use the land taken, whether for highway or for any other purpose, according to information he received from one or more DOTD employees.
Using comparable sales of land with and without highway frontage, Lowe assigned $3,500 per acre for the land taken (five *793 acres) and $1,750 per acre for severance damage to 15 acres remaining for residential use.
The State’s appraiser valued the land taken at $3,000-3,200 per acre. He gave no opinion as to severance damages, explaining that he “was not asked to address that.”
The trial court awarded $3,400 per acre for the land taken and $1,750 per acre for the residential acreage remaining that Lowe testified was damaged by the taking.[1] The State complains only of the award of severance damage and does not contest the $3,400-per-acre value the court assigned to the land taken.
SEVERANCE DAMAGES
If a partial taking lowers the value of the landowner’s remaining property, the landowner may recover, as severance damages, the difference between the market value of the remaining property “immediately before and immediately after the taking, taking into consideration the effects of the completion of the project in the manner proposed or planned.” LRS 48:453; State, through Department of Highways v. Hoyt, 284 So.2d 763 (La.1973). The landowner must prove severance damages by a preponderance of the evidence, and may do so by the informed and reasoned opinion of an expert, corroborated by the facts in the record. State, Dept. of Hwys. v. Denham Springs Dev. Co., Inc., 307 So.2d 304 (La.1975).
The standard for measuring severance damages under § 453 contemplates completion of the project for which the land was taken. The State may seek to offset the landowner’s severance damage by proving that the completed project provides “special benefits” to the remaining land. State, Department of Highways v. Snider, 276 So.2d 401 (La.App. 2d Cir.1973). Here, the State has abandoned the highway widening project for which the land was taken and has built in this area a new four-lane highway. At trial six years after the taking, the State had no plans to use the land taken, for highway or other purposes; Under these circumstances, the effect of the State’s failure to use the land taken on the value of the remaining land was properly considered by Lowe and the trial court on the issue of severance damages.
Lowe’s testimony was the only evidence on the issue and was accepted by the trial court as proof of the existence and amount of severance damages. We do not disturb the trial court’s factual findings on this issue unless they are shown to be clearly wrong. State, through Dept. of Highways v. Wilson, 372 So.2d 632 (La.App. 1st Cir. 1979).
The State’s contention that Lowe’s opinion of severance damages was based on an unsubstantiated presumption that the taking damaged the remainder of the property is not borne out by the record. Lowe gave this factual basis for his opinion:
The property taken was flush against the highway causing their property to be a hundred foot off the highway and it was obvious to me that property flush against the highway has more value than property that’s not flush against the highway particularly for residential ... use.
... [T]he thing that makes this taking unusual is that I cannot find in my investigation any plans to use the property ... [NJormally the State ... takes a strip of land and constructs a highway which would be flush against the remaining property owned by the property owner, but in this taking as far as I can determine, in talking to the Department District Office and to other people I find no contemplated plans for any use.
... [Tjhey were cut off from the highway and as far as I can tell, and I made a search, I find no access to the property from the highway. It is, in normal cases, *794 the department does give permits to cross land belonging to the state to your property but the unknown ... use of the hundred foot strip certainly put a cloud on the property not knowing for what purpose it would be used. It could be used for storage area, it could be used for buildings, it could be used for parking of heavy equipment or it may not be maintained at all which might be just as bad. It certainly had some effect on the remaining property.
The State argues that the landowners’ evidence of lack of access is speculative because they did not show that they had applied for a permit from the State for highway access to the remainder of their land, as they could have done under LRS 48:344:
Entrances to and exits from private properties adjacent to the rights of way of state highways may be regulated, prohibited, or abolished in the interest of the safety of the traveling public. The assistant secretary, office of highways, from time to time, shall prepare and promulgate descriptions and illustrations of various types and styles of entrances and exits consistent with this purpose and shall issue permits of necessity and convenience for the installation of entrances and exits in accordance with its promulgated regulations and standards. • The department may apply to the courts for such process as may be necessary to make the provisions of this Section effective.
The State does not cite any authority for its argument that the landowner who does not apply for an access permit may not recover severance damages for loss of access. By arguing that the landowners could or should have applied for an access permit, the State effectively concedes that the landowners do not have highway access after the taking. While Lowe acknowledged that the State normally issues such permits, he opined that the remaining land was damaged by the “unknown” use which might be made of the land taken, as well as by the limited access. On this record, the lack of evidence of a permit application does not affect the award for severance damage.
The State finally argues that the landowners have the same “access rights” as they had before the taking because the land taken was part of an abandoned railroad right-of-way that separated the parent tracts from the highway before the taking. Although the record does not show when the railroad right-of-way was abandoned, the State does not dispute that the landowners had highway access “immediately before ... the taking,” which is the relevant focus for the assessment of severance damages under LRS 48:453. Whether or not the landowners had highway access before the railroad abandoned the right-of-way is irrelevant.
We find no manifest error in the trial court’s acceptance of Lowe’s testimony as satisfactory proof of severance damages. See and compare State, Dept. of Hwys. v. Denham Springs Dev. Co., Inc., supra, and United Gas Pipe Line Co. v. Becnel, 417 So.2d 1198 (La.App. 4th Cir.1982).
LEGAL INTEREST
The State contends the trial court erred in awarding legal interest from the date of the taking, arguing for retroactive application of the 1988 amendment of LRS 48:455. This amendment changed the date that legal interest commences to run from the date of the taking to the date of the landowner’s demand for additional compensation. The amendment was applied retroactively in State, DOTD v. McClendon, 552 So.2d 1220 (La.App. 5th Cir.1989), writ denied.
This court expressly declined to follow McClendon in Dept. of Transp. & Dev. v. Williamson, 557 So.2d 731 (La.App. 2d Cir. 1990), writ denied, finding that the amendment affected substantive rights and would not be applied retroactively. See fn. 4, 557 So.2d at 735. See also Terrebonne v. South Lafourche Tidal Control, 445 So.2d 1221 (La.1984). On the authority of Williamson, we must find that the trial court properly awarded legal interest from the date of the taking.
*795 DECREE
At the State’s cost, to the extent allowed by law, the judgment is AFFIRMED.
HIGHTOWER, J., dissents with written opinion.

. Although the court stated that it would award $3,400 per acre for the land taken, we note that the judgment in favor of Eva Lanier awards her only $3,400 for 1.7 acres taken from her tract. She has not appealed or answered the appeal to have this apparently inadvertent error corrected. Under these circumstances, we do not increase the award. CCP Art. 2133; Boswell v. Roy O. Martin Lumber Co., Inc., 363 So.2d 506 (La.1978).