742 So.2d 979 (1999)
The TIMES PICAYUNE PUBLISHING CORPORATION and Jeffrey Meitrodt
v.
The NEW ORLEANS AVIATION BOARD.
No. 99-CA-237.
Court of Appeal of Louisiana, Fifth Circuit.
August 31, 1999.
Writ Denied December 10, 1999.
*980 Ronald J. Vega, Kenner, and Rebecca J. King, Marlene Quarles, Alvin Moon, New Orleans, Attorneys for Defendant/Appellant/Appellees.
James R. Swanson, Loretta G. Mince, New Orleans, Attorneys for Plaintiffs/Appellees/Appellants.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and SUSAN M. CHEHARDY.
DALEY, Judge.
The New Orleans Aviation Board (NOAB) appeals judgments dated October 29, 1998 and November 12, 1998, that required them to produce certain public record documents to the Times Picayune Publishing Corporation and Jeffrey Meidtrodt, one of its writers, under the Public Records Act (LSA-R.S. 44:1 et seq). The documents in question consisted of applications *981 submitted to the NOAB for determining Disadvantaged Business Enterprise (DBE) eligibility, and applications for determining State-Local Disadvantaged Business Enterprise (SLDBE) eligibility.
The October 29, 1998 judgment ordered the NOAB to disclose the applications to the Times Picayune, minus information protected from disclosure by law. The November 12, 1998 judgment found the NOAB in contempt of court for failure to comply with the October 29, 1998 judgment by failing to produce the questioned documents. The November 12, 1998 judgment ordered the NOAB to pay a contempt fine of $100.00 per day, beginning on October 30, 1998, for every day until NOAB produced the documents to the Times Picayune.
The NOAB appeals the October 29, 1998 and November 12, 1998 judgments. They argue that the trial court erred in ordering them to produce the documents, as they contained legally protected information, production of which would violate the applicants' expectations of privacy. They also argue that the trial court erred in requiring NOAB to allow inspection of the applicants' tax returns (attached to the applications). NOAB argues that the trial court erred in denying their Exception of Non-joinder of the applicants. Last, NOAB argues that the trial court erred in finding them in contempt of the October 29, 1998 judgment.
The Times Picayune appeals a later judgment in the same proceeding, rendered November 16, 1998, which awarded it $2,500.00 in attorney fees against the NOAB. The Times Picayune asks on appeal that this award be increased. The Times Picayune also answered NOAB's appeal, arguing that the portion of the trial court's November 12, 1998 judgment redacting certain enumerated questions from disclosure should be reversed, and the applications fully disclosed.
After the appeal was lodged in this court, but before briefs were due, the Times Picayune filed a Motion to Dismiss Appeal, contending that on December 2, 1998, NOAB turned over all the contested documents to the Times Picayune, which renders moot the NOAB's appeal (filed December 1, 1998) of the trial court's judgments. The NOAB filed a Motion for Protective Order in this court, asking that this court limit the Times Picayune's use of the documents until the case's review in this court.[1] This court, in an Order dated April 14, 1999, referred the Times Picayune's Motion to Dismiss to the panel on the merits, and further denied the Motion for Protective Order.
We deny the Motion to Dismiss Appeal, finding that other issues are raised besides the production of the documents, but hold that NOAB's conduct in producing the contested documents renders their appeal of those issues moot and limits this court to consideration of only one of NOAB's issues, whether the trial court erred in finding NOAB in contempt of its October 29, 1998 judgment. We affirm the trial court's judgment of November 12, 1998, finding NOAB in contempt of court.
In the Times Picayune's appeals, we find that the trial court erred in allowing the redaction of the enumerated questions and responses from the applications before disclosure, and we reverse that portion of the court's November 12, 1998 judgment, and order that the NOAB provide that information to the Times Picayune. We affirm the trial court's award of attorney's fees to the Times Picayune and award an additional $3,500.00 in attorney's fees for the prosecution of this appeal.

MOTION TO DISMISS APPEAL
The Times Picayune argues that since the NOAB has produced all of the disputed DBE and SLDBE applications, their appeal of the judgment ordering them to produce the applications is moot. They argue that since the documents have already *982 been produced, any opinion this court could render on the specific assignments of error asserted by NOAB would be an advisory opinion that cannot give any practical relief to NOAB.
The Times Picayune also argues that the NOAB voluntarily acquiesced in the judgment by producing the applications, and such voluntary acquiescence in the judgment prohibits their appeal under LSA-C.C.P. art.2085, which states:
Art.2085. Limitations on appeals
An appeal cannot be taken by a party who confessed judgment in the proceedings in the trial court or who voluntarily and unconditionally acquiesced in a judgment rendered against him. Confession of or acquiescence in part of a divisible judgment or in a favorable part of an indivisible judgment does not preclude an appeal as to other parts of such judgment.
The acquiescence that prohibits an appeal, or destroys it when taken, is the acquiescence in a decree commanding something to be done or given. If the thing commanded to be done or given is done or given, there has been acquiescence in the judgment. Mason v. Red River Lumber Co., 188 La. 686, 177 So. 801 (1937); Haddad v. Tolbert, 426 So.2d 328 (La.App. 2 Cir.1983).
We agree that NOAB has acquiesced in the trial court's judgment of October 29, 1998 by producing the very documents for which they sought protection and, therefore, this court shall not consider the assignments of error raised by NOAB as to the production of the documents because these issues have been made moot by NOAB's voluntary conduct. However, NOAB argues an additional issue in this appeal, that the court erred in holding them in contempt of court in the judgment of November 12, 1998. We, therefore, deny the Motion to Dismiss the Appeal, and we shall consider on appeal only NOAB's argument regarding contempt of court finding in the November 12, 1998 judgment.[2]

CONTEMPT OF COURT
NOAB argues that there is no evidence, it "violated the order of the court intentionally, knowingly and purposefully, without justifiable excuse."[3] It argues that the trial court's judgment was clearly ambiguous regarding "production" of the applications, in that the judgment did not specify how, when, or even where, NOAB was to produce the documents; that is, whether NOAB should send the documents to the Times Picayune, or whether the Times Picayune should pick up the applications at the NOAB's office.
We find that the trial court's judgment regarding production of documents was not ambiguous. The term "production" as used in the judgment should be easily understood by a practicing lawyer. The fact that the trial court did not specify the physical logistics of the production simply means that he left those details up to the parties, most likely feeling them capable of arranging a time and place most convenient to both parties. The fact that the judgment allowed NOAB to exercise some control over the physical details of the production does not render it ambiguous. The fact that the judgment was silent regarding these details does not excuse NOAB's failure to produce the documents as ordered.
Next, NOAB argues that plaintiffs failed to show that they did not "produce" the records. Here, they argue that the only evidence the Times Picayune presented *983 regarding NOAB's wilful violation of the judgment was that their attorney was unable to reach NOAB's attorney on several occasions while he was out of town. NOAB argues that this testimony does not show that the documents were not available for production. NOAB also argues that no evidence was introduced to show that NOAB's second attorney had been contacted in an attempt to review the documents.
NOAB had custody and control of the documents; the judgment ordered NOAB, not the Times Picayune, to produce the documents. It is clear, in this posture, that NOAB had the affirmative duty to comply with the judgment by making contact with the Times Picayune to set up the details of the production, not the other way around. The arguments advanced by NOAB to avoid responsibility for failure to comply with the court's judgment are without legal merit.

ANSWER TO APPEAL
The Times Picayune asks this court to modify the trial court's judgment of November 12, 1998, where it allowed NOAB to exclude specific questions on the applications before it disclosed the applications to the Times Picayune. The Times Picayune requests full disclosure of the applications, specifically the redacted questions and answers, which are:
25. Have you ever been denied a personal loan or mortgage, when you believe you were qualified to obtain it?
26. Have you ever been denied admission to a school or university when you believe you were qualified for admission?
27. To what business, fraternal or social organizations do you belong?
28. Have you ever been denied membership in a club or social organization?
29. Have you even been denied employment or promotional opportunities in employment when you believe you were qualified?
38. Has your business ever been denied credit, a mortgage or a loan, by a bank or other financial institution, for which you believe the business was qualified?
42. Has your business ever been denied a bond by bonding company when you believed your business was qualified to obtain the bond?
51. What is the percentage of gross profit for the firm for each of the past three (3) years?
In the transcript of the hearing on October 16, 1998, the judge explained his position:
THE COURT:
Apparently in the Capital City[4] case, it was either Judge Brown or the Court of Appeals, applied the balancing test, the policy concerns versus an individual's right to privacy.
The Supreme Court overruled, and this is the last word on it from the Supreme Court, and said that the resumes of these people were not protected or exempt from the Public Records Act.
Now, in that case they allowed the defendants to delete or strike from the applications, any information that was specifically excluded by law.
And also they state the types of information that should be struck, home telephone numbers and addresses, or any information that would expose an applicant to public disgrace or intrude upon the applicant's seclusion, solitude, private affairs, and the resumes in that case did not have that type of information, except for maybe home addresses and phone numbers.

*984 The Court takes the position of whether the person that is applying for a particular status or not, when they apply for a contract or position with a public entity, they put their lives in public view.
The Court doesn't find that it's protected under this case, and the Court is going to issue the writ of mandamus, but I'm going to allow the defendant to strike those things that are specifically excluded by law.
At the hearing on November 10, 1998, the judge clarified his earlier ruling by allowing redaction of questions and responses nos. 25, 26, 27, 28, 29, 38, 42, and 51.
The Times Picayune argues that these questions and answers go to the very heart of the program for which the applicants applied, and that the public is entitled to know whether the applicants were truly economically disadvantaged or not. The Times Picayune argues that by applying for the program, the applicants willingly divulged this information and have no expectation of privacy in the applications, and further that none of this information is protected by any state law from disclosure.
In Capital City Press v. East Baton Rouge Parish Metropolitan Council, supra, the Supreme Court considered the disclosure of certain applications for public employment.[5] That court, quoting its previous jurisprudence, noted that the right of the public to have access to the public records is a fundamental right guaranteed by the constitution. (La. Const.Art. 12, § 3.) This provision must be construed liberally in favor of free and unrestricted access to the records, and that access can be denied only when a law, specifically and unequivocally, provides otherwise.
We find no specific law that protects the information in question sought by the Times Picayune. We note that the law contains an exemption for items in the personnel records of a public employee, such as an unlisted home telephone number, and home telephone numbers and home address when that employee has requested their confidentiality. LSA-R.S. 44:11. Further, the medical records of a person covered by the State Employees' Group Benefits Program are exempted from disclosure under the Public Records Law. LSA-R.S. 44:12. But no specific law protects the sought-after information, which was given in an application to qualify for a public program.
The applications for DBE and SLDBE are similar to employment applications. Regarding items in an application for employment, the Supreme Court stated:
... If a resume or application contains facts which would expose the applicant to public disgrace, are clearly private in nature, or are protected by law from disclosure, then that resume or application, or the private matters contained therein, may not be disclosable depending on the circumstances. However, in general, an applicant for public employment in Louisiana has no reason to expect that his or her application will be kept private. Further, in light of this state's expansive and constitutionally protected guarantee of public access to public documents, to be denied only where a law specifically and unequivocally provides otherwise, it is clear that Louisiana citizens have not yet chosen through their legislature to recognize a general right of privacy in an application for public employment. [Emphasis added.]
Capital City Press at p. 567.
In this case, the applicants apply for employment contracts under the Disadvantaged Business Enterprise program and the State-Local Disadvantaged Business Enterprise program at the New Orleans Airport. In Louisiana Associated General Contractors, Inc. v. New Orleans Aviation Board, 97-0752 (La.10/31/97), 701 So.2d 130, the program is described as *985 being developed pursuant to 49 C.F.R. Pt. 23, Subpart D. The Code of Federal Regulations, 49 CFR Pt. 26, App. E, defines economically disadvantaged individuals as "socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same or similar line of business who are not socially disadvantaged." Socially disadvantaged individuals are defined in the same section as "those who have been subjected to racial or ethnic prejudice or cultural bias within American society because of their identities as members of groups and without regard to their individual qualities. Social disadvantage must stem from circumstances beyond their control." The section then lists elements of social disadvantage, including "negative impact on entry into the business world because of the disadvantage" and "employment" and "business history".
We find that the redacted questions and responses are directly relevant to whether or not an applicant is economically disadvantaged and thus eligible for participation under the program. We find that under these circumstances, the applicants have no reasonable expectation of privacy in that information. We note, in the Times Picayune's brief, that if the applicants answered "yes" to the questions at issue, they were invited to explain in an attached statement that was specifically labeled "confidential." Our decision here does not include disclosure of these confidential attachments. Therefore, the trial court erred in allowing the NOAB to redact those questions and answers from the applications' disclosure. We reverse that portion of the November 12, 1998 judgment that allows the redaction of these questions and answers thereto, and order that the same be produced to the Times Picayune.
The NOAB asserts on appeal that the applicants' tax returns should not be disclosed. The Times Picayune has conceded, in numerous places in the record, that the tax returns are protected by law from disclosure.

ATTORNEYS' FEES
LSA-R.S. 44:35 provides that when "a person seeking the right to inspect or to receive a copy of a public record prevails in his suit, he shall be awarded reasonable attorney's fees and other costs of litigation." The Times Picayune argues that the trial court's award of only $2,500.00 in attorney's fees was abusively low, as they incurred actual expense of $12,850.00 in attorney's fees. They also ask for additional attorney's fees for prosecution of this appeal.
The trial court is vested with much discretion in determining the proper attorney fees, and the award should not be disturbed on appeal absent an abuse of discretion. Adams v. Franchise Finance Corp. of America, 96-855 (La.App. 3 Cir. 2/5/97), 689 So.2d 572, writ denied 97-0604 (La.4/18/97), 692 So.2d 456.
The matter of reasonable attorneys fees is to be decided by utilizing the following criteria:
1. The ultimate result obtained;
2. The responsibility incurred;
3. Importance of the litigation;
4. Amount of money involved;
5. Extent and character of the work performed;
6. Legal knowledge, attainment and skill of the attorneys;
7. Number of appearances made;
8. Intricacies of the facts involved;
9. Diligence and skill of counsel; and
10. The court's own knowledge.
See State, Department of Transportation and Development v. Williamson, 557 So.2d 731 (La.App. 2 Cir.1990).
The trial court held a hearing where it received evidence from counsel for the Times Picayune regarding the itemized breakdown of the legal fees and costs in this case. Counsel was prepared to offer witness testimony to support the *986 documentary evidence, but the trial court did not require it. Counsel for the NOAB objected to some of the evidence, such as copy fees, on the basis that he could not tell from the billing records if the copies were associated with this case. The trial court took the matter under advisement and rendered judgment a few days later (November 16, 1998), but did not state reasons or a basis for his determination that $2,500.00 was a reasonable attorney fee in this case.
After review of the documentary evidence and transcript of the hearing, we agree that the award of $2,500.00 is low. We reach this conclusion by analyzing the attorneys' work in this case with the above ten criteria. The Times Picayune prevailed, at the trial court, in each step and in the ultimate result, with the exception of the trial court's redaction of the enumerated questions. We also note that the NOAB was held in contempt of court for failing to comply with trial court orders to produce the documents, which required the Times Picayune's counsel to perform extra work and court appearances. However, the trial court is in a better position to evaluate the merits of the attorneys' fee request and we will not disturb the trial court award absent clear evidence of abuse of discretion which we do not find in this case.
We do, however, find that the Times Picayune should be awarded additional attorneys' fees for prosecuting this appeal. Thornton v. Department of Public Safety, 536 So.2d 595 (La.App. 1 Cir.1988). In awarding attorneys' fees for this appeal, we note the following: NOAB's actions in producing the contested documents rendered most of NOAB's appeal moot, yet they persisted in the appeal of those issues anyway, requiring the Times Picayune to respond to moot issues. Further, the Times Picayune prevails here in their request for the disclosure of the redacted questions and responses on the applications; and counsel's time and expertise is well evidenced by the briefs on appeal. We award an additional $3,500.00 for attorneys' fees on appeal.
Accordingly, the trial court's judgment of October 29, 1998 finding NOAB in contempt of court is affirmed. The trial court's judgment of November 12, 1998 is reversed insofar as it exempts the specific questions and responses in the applications from disclosure to the Times Picayune. We affirm the award of reasonable attorneys' fees to the Times Picayune and award an additional $3,500.00 in attorneys' fees for this appeal. All costs of this appeal are taxed to NOAB.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] NOAB also filed a Motion for Protective Order in the trial court, which was denied.
[2] NOAB also argues that the trial court erred in denying the exception of non-joinder of parties (the individual applicants) because the applicants should have been allowed the opportunity to protect their interests, as they are required to divulge extremely personal and confidential information. We find that the NOAB's acquiescence in the judgment also renders this issue moot.
[3] City of Kenner v. Jumonville, 97-125 (La. App 5 Cir. 8/27/97), 701 So.2d 223.
[4] Capital City Press et al v. East Baton Rouge Parish Metropolitan Council et al., 96-1979 (La.7/1/97), 696 So.2d 562.
[5] Director and Assistant Director of the Baton Rouge Airport.